OPINION OF THE COURT
Edward H. Lehner, J.
The threshold issue on the pending motions in the above- *833 entitled proceedings (which are herewith consolidated for disposition) is whether the contract for the sale of the Coliseum site was illegal by reason of the inclusion of a provision for a $57 million reduction in the purchase price in the event the developer is denied a bonus permitting an increase in the allowable floor area for the project. The court finds such provision illegal, and declares the resolutions approving the transaction to be null and void.
FACTS
These proceedings involve the site of the New York Coliseum and an adjoining office building located on the west side of Columbus Circle in Manhattan extending from 58th to 60th Streets.
In 1953 the City of New York (the City) acquired the property by eminent domain, and sold it to the Triborough Bridge and Tunnel Authority (TBTA), an affiliate of the Metropolitan Transportation Authority (MTA), both of which are public authorities created by the State. On that site, the TBTA constructed and operated the office building and Coliseum, which was employed as a convention center prior to the opening of the Javits Convention Center in 1986. The City has a contingent reversionary interest in the property, which ripens only in the event the corporate existence of the TBTA terminates.
In 1982 a report was issued by the New York City Planning Commission (CPC) recommending changes in zoning affecting the west side of Manhattan (including the Coliseum site), intended to shift development away from the crowded east side. In May 1982 the Board of Estimate approved the recommended changes, which included incentive zoning.
The Coliseum is located in a zone which permits construction as of right of floor space up to a maximum of 15 times the square footage of the lot. This floor-area ratio (FAR) is subject to being increased by up to 20% in exchange for the developer agreeing to "provide major improvements for adjacent subway stations”, provided that "the zoning lot for the development * * * on which a floor area bonus is requested shall be adjacent to the mezzanine or concourse of the subway station for which the improvement is proposed or an existing connecting passageway to the station.” (NY City Zoning Resolution § 81-53.)
In December 1984 the City and the TBTA agreed to sell the *834 site for private development. In February 1985, TBTA, which was to be the "lead agency” for review under the State Environmental Quality Review Act (SEQRA), offered the property for sale pursuant to a request for proposal (RFP).
The RFP provided that: (i) the amount of the purchase price offered "will be the primary consideration”, and the criteria for acceptance would also include "the economic viability of the proposal, the developer’s experience and financial capacity” as well as "the overall benefit to the City”; (ii) the designated developer "must apply for and use its best efforts to obtain the maximum twenty percent Subway Bonus” (448,500 additional square feet); (iii) if any FAR bonus is granted, the developer must agree to construct the subway station improvements "as set forth in concept” in the RFP, with such obligation to exist even if the maximum bonus is not granted, so long as any FAR bonus is approved; (iv) the amount of the bid "must assume the maximum twenty percent FAR Subway Bonus will be granted”; (v) the purchase price will be reduced by a specified formula if the full 20% FAR bonus is not granted, with such amount to be $57 million if no bonus is granted; (vi) the City and the TBTA will, pursuant to their memorandum of agreement dated December 19, 1984, each receive one half of the net proceeds, with the TBTA to "spend its proceeds solely for MTA capital projects in the City of New York”, while the City "will spend its proceeds over a five year period solely for TA capital projects”, with 28% to be spent in the first year and 18% in each of the subsequent four years; and (vii) if no FAR bonus is granted, the City and TBTA will have no obligation to convey the site.
By May 1, 1985, 15 proposals were received in response to the RFP, and although one bid was received for $477 million, a committee of City and MTA officials selected the bid of $455,100,000 from Boston Properties. A contract of sale dated September 30, 1985 was thereafter entered into which provides for a mixed use project, including the headquarters for the brokerage firm of Salomon Brothers, Inc. (which subsequently became an equity participant in the project and was expected to occupy over half the building), additional office space, residences, motion picture theatres, retail stores, and a parking garage. The building would have two towers, one 925 feet (68 stories) and the other 802 feet (58 stories), with a total of 9,300 people expected to be employed at the site.
The contract provides that if no FAR bonus is granted, the *835 purchase price will be reduced by $57 million. The estimated cost of improvements to be made by the purchaser to the adjoining Columbus Circle (59th Street) subway station is between $35 and $40 million, although the estimated cost at the time of the execution of the contract is claimed to have been between $20 and $25 million.
Thereafter, review procedures under SEQRA and the Uniform Land Use Review Procedure were commenced. Two of the three affected community boards gave unfavorable recommendations, while one board adopted a conditional resolution. The Manhattan Borough Board disapproved the project. The SEQRA process was certified as complete on November 28, 1986.
In December 1986, the CPC made certain findings with respect to needed improvements to the Columbus Circle subway station, and approved the maximum 20% FAR bonus.
In February 1987 both the Board of the TBTA and the Board of Estimate approved the project. The Board of Estimate also revoked a prior urban renewal plan deed restriction applicable to the site which prohibited any increase in density or change in land use without its consent.
By amendment dated February 6, 1987 among the City, MTA and TBTA, the prior agreement with respect to the application of the proceeds of the sale was altered. Rather than one half being payable to the TBTA for MTA capital projects, said half is to be paid to the TBTA, as escrow agent, to be dispersed at the direction of the City to the New York City Transit Authority (TA) for operating purposes. Such payments are to be deemed payments by the City under its obligation under section 18-b of the Transportation Law to make operating subsidies to the TA, matching moneys appropriated by the State.
THE CONTENTIONS OF THE PARTIES
In the CPLR article 78 proceeding instituted by the Municipal Art Society of New York (MAS) and others, the following arguments are raised: (1) The City illegally sold a zoning bonus because the price is reduced by $57 million in the event a subway bonus is not granted; (2) the TBTA was improperly designated "lead agency” under SEQRA; (3) the execution of the contract of sale with Boston Properties was improper as it was not preceded by a SEQRA review; (4) the draft environmental impact statement (DEIS) and final environmental *836 impact statement (FEIS) were illegally issued as, among other claims, the traffic and air quality analysis was inadequate.
In the related proceeding (the Haskin petition), movants challenge the DEIS and the FEIS for failing to take a "hard look” at secondary displacement that allegedly will occur if the project is constructed. They also seek a judgment declaring that the City has violated its obligation to use its land use power in a manner that serves the general welfare, in that it approved the sale of public land for a project that excludes low- and middle-income persons from residing in the project, and causes displacement of such persons elsewhere in the neighboring Clinton community.
In response to the claim that the City illegally "sold” the bonus, respondents maintain that they did not do so, "but rather structured the bids to comply with current zoning for the site and to obtain major beneficial subway station improvements.”
DISCUSSION
Section 81-53 of the New York City Zoning Resolution provides that, when granting a FAR bonus, the zoning lot for which the bonus is requested must be adjacent to the subway station to be improved. In the March 1982 report of the CPC entitled "Midtown Zoning”, which proposed the zoning changes which were adopted in May of that year, the following is said rejecting a suggestion for a bonus for a nonadjacent improvement: "Subway Improvements. A floor area bonus is provided for a substantial subway entrance improvement adjacent to a development site * * * An off-site subway-station improvement does not provide any compensating reduction in density. The proposed bonus is justified because it improves direct access to the larger development. For off-site subway improvements direct financial incentives appear to be more appropriate than zoning measures.” (Id., at 36-37.)
In its "Plain English” summary of section 81-535 of the Zoning Resolution, the CPC sets forth the basis for determining the amount of the bonus as follows: "The amount of the floor area bonus subject to a 20 percent maximum over basic FAR will be in the City Planning Commission’s discretion and will depend on findings made by the Commission that relate to the benefits the public will derive from the improvement.”
In its June 1981 report entitled Midtown Development, the CPC states: "A major subway entrance improvement can *837 benefit the building as well as the public. To encourage this, we will sanction a floor area bonus up to 20 percent of base FAR, depending upon the nature and cost of the station improvement.” (Id., at 54.)
Petitioners state that they "do not question whether the amount to be spent on these improvements * * * is sufficient to justify a bonus in some amount.” Rather, the claim of illegality relates solely to the $57 million. This sum, which the City and the TBTA will receive as a result of the grant of the bonus, is not earmarked for the improvement of any local facility. Moreover, pursuant to the February 6, 1987 amendment to the agreement between the City, MTA and TBTA, one half of the money is no longer to be used for mass transit capital improvements, but is to be applied to the City’s statutory obligation to provide operating subsidies to the MTA.
DECISION
Although the transaction may well have been structured to paint a different picture, the clear fact of the matter is that in return for the grant by the CPC of the 20% floor-area-ratio-bonus, the City is obtaining not only $35 to $40 million of local subway improvements, but an additional $57 million in cash to be employed for other purposes. This is not contemplated by the New York City Zoning Resolution.
Zoning is a " Vital tool for maintaining a civilized form of existence’ for the benefit and welfare of an entire community” (Little Joseph Realty v Town of Babylon, 41 NY2d 738, 745), and is "designed to preserve the character of zoned areas from encroachments of uses which devaluate living conditions” (Lavere v Board of Zoning Appeals, 39 AD2d 639, ajfd 33 NY2d 873), with its goal being "to provide for the development of a balanced, cohesive community which will make efficient use of [a] town’s available land.” (Berenson v Town of New Castle, 38 NY2d 102, 109.)
When disposing of its property, government, of course, has an obligation to maximize the revenue it receives, consistent with its governmental responsibilities. Increasing the bulk of a project imposes a certain burden on the local community. The New York City Zoning Resolution provides a means by which, in return for the imposition of that burden, a benefit is granted to the community.
Here, the major portion of the benefit which the purchaser is willing to pay for the right to construct a building of *838 greater density than is permitted "as of right” is to be paid to the City to be employed for purposes other than local improvements. A proper quid pro quo for the grant of the right to increase the bulk of a building may not be the payment of additional cash into the City’s coffers for citywide use.
Although the members of the CPC may well in good faith have approved the full 20% FAR bonus as a fair incentive for the developer agreeing to make $35 to $40 million of subway station improvements, the developer and the City officials who approved the contract obviously recognized that this bonus was worth a great deal more. However, government may not place itself in the position of reaping a cash premium because one of its agencies bestows a zoning benefit upon a developer. Zoning benefits are not cash items.
Although the court today is ruling that the City is prohibited from making what, in effect, is a "cash sale” of a zoning bonus, it should be noted that even without a higher sales price, construction of a larger building will, over the years, result in increased revenues to the City. Undoubtedly, such a building will receive a higher assessed valuation, with consequently greater annual payments of real estate taxes, and will presumably also generate additional income tax payments from the owner.
CONCLUSION
In conclusion, the court finds that the contract with the developer provides for an illegal payment. Consequently, the approvals thereof by the City and TBTA are null and void.
In light of the foregoing there is no need to reach other claims of illegality asserted by petitioners.
Petitioners’ motions, to the extent that they seek the aforesaid determination, are granted, and respondents’ cross motions are in all respects denied.