[881 NE2d 172, 851 NYS2d 76]

In the Matter of RIVERKEEPER, INC., Respondent, v PLANNING BOARD OF TOWN OF SOUTHEAST et al., Appellants.

In the Matter of RICHARD FEUERMAN et al., Respondents, v PLANNING BOARD OF TOWN OF SOUTHEAST et al., Appellants.

In the Matter of CROTON WATERSHED CLEAN WATER COALITION, INC., et al., Respondents, v PLANNING BOARD OF TOWN OF SOUTHEAST et al., Appellants.

In the Matter of CHERIE INGRAHAM et al., Respondents, v PLANNING BOARD OF TOWN OF SOUTHEAST et al., Appellants.

Argued October 18, 2007; decided November 19, 2007

## POINTS OF COUNSEL

*Willis H. Stephens, Jr., Town Attorney,* Brewster, for Planning Board of the Town of Southeast, appellant in the first three above-entitled proceedings. I. The Appellate Division erred when it found that the Planning Board of the Town of Southeast's initial final environmental impact statement and supplemental environmental impact statement were inadequate. (*Matter of Coca-Cola Bottling Co. of N.Y. v Board of Estimate of City of N.Y.,* 72 NY2d 674; *Matter of Penfield Panorama Area Community v Town of Penfield Planning Bd.,* 253 AD2d 342; *Matter of Long Is. Pine Barrens Socy. v Planning Bd. of Town of Brookhaven,* 78 NY2d 608.) II. The court below erred by determining that the passage of time warrants preparation of a supplemental environmental impact statement. (*Matter of C/S 12th Ave. LLC v City of New York,* 32 AD3d 1; *Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400; *Vermont Yankee Nuclear Power Corp. v Natural Resources Defense Council, Inc.,* 435 US 519; *Matter of Village of Pelham v City of Mount Vernon Indus. Dev. Agency,* 302 AD2d 399, 100 NY2d 505; *Matter of Town of Pleasant Val. v Town of Poughkeepsie Planning Bd.,* 289 AD2d 583, 98 NY2d 602; *Roosevelt Islanders for Responsible Southtown Dev. v Roosevelt Is. Operating Corp.,* 291 AD2d 40, 97 NY2d 613; *Matter of Town of Charleston v Montgomery, Otsego, Schoharie Solid Waste Mgt. Auth.,* 235 AD2d 608, 89 NY2d 812; *Matter of Hallenbeck v Onondaga County Resource Recovery Agency,* 225 AD2d 1036; *Matter of Morse v Town of Gardiner Planning Bd.,* 164 AD2d 336; *Matter of Orange Envt. v Jorling,* 161 AD2d 1069.) III. The Appellate Division erred in determining that a lead agency must await determinations from other agencies before deciding whether a supplemental environmental impact statement is necessary. (*Matter of Steele v Town of Salem Planning Bd.,* 200 AD2d 870, 83 NY2d 757.) IV. The Planning Board of the Town of Southeast's decision not to require a supplemental environmental impact statement was supported by substantial evidence in the record.

*Keane & Beane, P.C.,* White Plains (*Richard L. O'Rourke, Judson K. Siebert* and *Edward J. Phillips* of counsel), and *Chadbourne & Parke LLP,* New York City (*Alan I. Raylesberg* and

*Thomas E. Butler* of counsel), for Glickenhaus Brewster Development, Inc., appellant in the first three above-entitled proceedings. I. The Appellate Division did not apply the correct standard of review to the determination made by the Planning Board of the Town of Southeast. (*Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400; *Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359; *Matter of Merson v McNally,* 90 NY2d 742; *Matter of Chemical Specialties Mfrs. Assn. v Jorling,* 85 NY2d 382; *Akpan v Koch,* 75 NY2d 561; *Matter of Neville v Koch,* 79 NY2d 416; *Matter of Ifrah v Utschig,* 98 NY2d 304; *Matter of Retail Prop. Trust v Board of Zoning Appeals of Town of Hempstead,* 98 NY2d 190; *Matter of P.M.S. Assets v Zoning Bd. of Appeals of Vil. of Pleasantville,* 98 NY2d 683.) II. The Appellate Division improperly second-guessed a reasonable, well-supported, State Environmental Quality Review Act determination made by the Planning Board of the Town of Southeast. (*Matter of Seven Acre Wood St. Assoc. v Town of Bedford,* 302 AD2d 532.) III. The Appellate Division incorrectly concluded that the Planning Board of the Town of Southeast improperly deferred its review of environmental issues to other agencies. (*Matter of Coca-Cola Bottling Co. of N.Y. v Board of Estimate of City of N.Y.,* 72 NY2d 674; *Matter of Penfield Panorama Area Community v Town of Penfield Planning Bd.,* 253 AD2d 342; *Matter of Long Is. Pine Barrens Socy. v Planning Bd. of Town of Brookhaven,* 78 NY2d 608.) IV. The Appellate Division otherwise misconstrued the State Environmental Quality Review Act by imposing requirements not found in the statute. (*Matter of Steele v Town of Salem Planning Bd.,* 200 AD2d 870, 83 NY2d 757.)

*James L. Simpson,* White Plains, for Riverkeeper, Inc., respondent in the first above-entitled proceeding. I. The Appellate Division applied the appropriate standard of review. (*Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400; *Matter of Doremus v Town of Oyster Bay,* 274 AD2d 390; *Town of Red Hook v Dutchess County Resource Recovery Agency,* 146 Misc 2d 723.) II. The Appellate Division properly held that the Planning Board of the Town of Southeast utterly failed to take the requisite "hard look" or provide a "reasoned elaboration" for its determination. (*Matter of Doremus v Town of Oyster Bay,* 274 AD2d 390; *Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400; *Glen Head-Glenwood Landing Civic Council v Town of Oyster Bay,* 88 AD2d 484; *Matter of Merson v McNally,* 90 NY2d 742; *Matter of Penfield Panorama Area Community v Town of Penfield Planning Bd.,* 253 AD2d 342; *Kana-*

*ley v Brennan,* 119 Misc 2d 1003, 120 AD2d 974; *Matter of Farrington Close Condominium Bd. of Mgrs. v Incorporated Vil. of Southampton,* 205 AD2d 623; *Matter of Iorio v Town of Mount Pleasant,* 131 Misc 2d 395; *Matter of Coca-Cola Bottling Co. of N.Y. v Board of Estimate of City of N.Y.,* 72 NY2d 674; *Matter of Kahn v Pasnik,* 90 NY2d 569.) III. The Appellate Division appropriately found that significant changes in circumstances and project design require preparation of a supplemental environmental impact statement. (*Matter of Doremus v Town of Oyster Bay,* 274 AD2d 390; *Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400; *Matter of Bryn Mawr Props. v Fries,* 160 AD2d 1004; *Glen Head-Glenwood Landing Civic Council v Town of Oyster Bay,* 88 AD2d 484; *Matter of Farrington Close Condominium Bd. of Mgrs. v Incorporated Vil. of Southampton,* 205 AD2d 623.) IV. The State Environmental Quality Review Act requires action and assessment, not mere disclosure of environmental impacts. (*Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400; *Matter of Merson v McNally,* 90 NY2d 742.) V. There is heightened importance of a supplemental environmental impact statement where unfiltered public drinking water sources are at stake. (*Matter of Doremus v Town of Oyster Bay,* 274 AD2d 390; *Matter of Bryn Mawr Props. v Fries,* 160 AD2d 1004.) VI. Appellants' arguments attempt to circumvent a well-reasoned judicial opinion. (*Matter of Doremus v Town of Oyster Bay,* 274 AD2d 390; *Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400; *Town of Red Hook v Dutchess County Resource Recovery Agency,* 146 Misc 2d 723; *Matter of Carpenter v City of Ithaca Planning Bd.,* 190 AD2d 934; *Matter of Merson v McNally,* 90 NY2d 742; *Glen Head-Glenwood Landing Civic Council v Town of Oyster Bay,* 88 AD2d 484.)

*McMillan, Constabile, Maker & Perone, LLP,* Larchmont (*William Maker, Jr.,* of counsel), for Richard Feuerman and others, respondents in the second above-entitled proceeding. I. The Planning Board of the Town of Southeast made virtually no effort to review the areas of environmental concern identified by Justice Nicolai. (*Matter of Hunter,* 4 NY3d 260.) II. The facts bear out the correctness of the Appellate Division's decision and order. (*Matter of Kahn v Pasnik,* 90 NY2d 569; *Matter of C/S 12th Ave. LLC v City of New York,* 32 AD3d 1; *Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400; *Matter of Doremus v Town of Oyster Bay,* 274 AD2d 390.) III. The post-2003 reviews by other agencies do not absolve the Planning Board of the Town of Southeast for its improper State Environ-

mental Quality Review Act review. (*Matter of Merson v McNally,* 90 NY2d 742; *Matter of New York City Coalition to End Lead Poisoning v Vallone,* 100 NY2d 337; *Matter of King v Saratoga County Bd. of Supervisors,* 89 NY2d 341; *Matter of City Council of City of Watervliet v Town Bd. of Town of Colonie,* 3 NY3d 508.) IV. The environmental review of the Meadows at Deans Corners was not as thorough as the respondents-appellants would have this Court believe. V. *Riverkeeper II* does not require a supplemental environmental impact statement whenever a State Environmental Quality Review Act process has become lengthy or changes have occurred. VI. Faulting the Planning Board of the Town of Southeast for not seeking comments from other involved agencies before deciding not to require a supplemental environmental impact statement is a logical extrapolation of the State Environmental Quality Review Act regulations. (*Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400; *Matter of Spitzer v Farrell,* 100 NY2d 186; *Matter of Kahn v Pasnik,* 90 NY2d 569.) VII. Ordering the preparation of a supplemental environmental impact statement was the proper remedy. (*Matter of Coca-Cola Bottling Co. of N.Y. v Board of Estimate of City of N.Y.,* 72 NY2d 674; *Matter of City Council of City of Watervliet v Town Bd. of Town of Colonie,* 3 NY3d 508; *Matter of Kahn v Pasnik,* 90 NY2d 569; *Matter of Tri-County Taxpayers Assn. v Town Bd. of Town of Queensbury,* 55 NY2d 41.)

*James Bacon,* New Paltz, for Croton Watershed Clean Water Coalition, Inc. and others, respondents in the third above-entitled proceeding. I. The appellate court applied the correct standard of review. (*H.O.M.E.S. v New York State Urban Dev. Corp.,* 69 AD2d 222; *Matter of Save the Pine Bush v Planning Bd. of City of Albany,* 96 AD2d 986; *Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400; *Natural Resources Defense Council, Inc. v Muszynski,* 268 F3d 91; *Matter of Penfield Panorama Area Community v Town of Penfield Planning Bd.,* 253 AD2d 342.) II. The Planning Board of the Town of Southeast failed to take a "hard look" at the project's potentially significant adverse environmental impacts. (*Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400; *Matter of Coca-Cola Bottling Co. of N.Y. v Board of Estimate of City of N.Y.,* 72 NY2d 674; *Mobil Oil Corp. v City of Syracuse Indus. Dev. Agency,* 224 AD2d 15, 89 NY2d 811; *Matter of Chemical Specialties Mfrs. Assn. v Jorling,* 85 NY2d 382; *Glen Head-Glenwood Landing Civic Council v Town of Oyster Bay,* 88 AD2d 484; *Matter of Coalition Against Lincoln W., Inc. v Weinshall,* 21 AD3d 215; *Mat-*

ter of *Doremus v Town of Oyster Bay*, 274 AD2d 390; *Chinese Staff & Workers Assn. v City of New York*, 68 NY2d 359; *Matter of Fleck v Town of Colden*, 16 AD3d 1052; *Matter of Yellow Lantern Kampground v Town of Cortlandville*, 279 AD2d 6.) III. The appellate court ruling is consistent with the State Environmental Quality Review Act and existing case law. (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400; *Matter of Coca-Cola Bottling Co. of N.Y. v Board of Estimate of City of N.Y.*, 72 NY2d 674; *Matter of Doremus v Town of Oyster Bay*, 274 AD2d 390; *Matter of Price v Common Council of City of Buffalo*, 3 Misc 3d 625; *Town of Red Hook v Dutchess County Resource Recovery Agency*, 146 Misc 2d 723; *Roosevelt Islanders for Responsible Southtown Dev. v Roosevelt Is. Operating Corp.*, 291 AD2d 40; *Sun Co. v City of Syracuse Indus. Dev. Agency*, 209 AD2d 34; *Matter of Schodack Concerned Citizens v Town Bd. of Town of Schodack*, 148 AD2d 130; *Matter of Town of Henrietta v Department of Envtl. Conservation of State of N.Y.*, 76 AD2d 215.)

*Andrew M. Cuomo, Attorney General*, Albany (*Barbara D. Underwood, Benjamin N. Gutman, Katherine Kennedy* and *Philip M. Bein* of counsel), for State of New York, amicus curiae in the first three above-entitled proceedings. The Town of Southeast Planning Board should have required a supplemental environmental impact statement to address the development project's effects on the Muscoot Reservoir's water quality. (*Glen Head-Glenwood Landing Civic Council v Town of Oyster Bay*, 88 AD2d 484; *Roosevelt Islanders for Responsible Southtown Dev. v Roosevelt Is. Operating Corp.*, 291 AD2d 40; *Matter of Committee for Environmentally Sound Dev. v City of New York*, 190 Misc 2d 359; *Matter of Kahn v Pasnik*, 90 NY2d 569; *Matter of Doremus v Town of Oyster Bay*, 274 AD2d 390; *Matter of Bryn Mawr Props. v Fries*, 160 AD2d 1004; *Dubois v United States Dept. of Agric.*, 102 F3d 1273; *Sierra Club v Flowers*, 423 F Supp 2d 1273; *Natural Resources Defense Council, Inc. v United States Army Corps of Engrs.*, 399 F Supp 2d 386; *Matter of Penfield Panorama Area Community v Town of Penfield Planning Bd.*, 253 AD2d 342.)

*Michael E. Kenneally, Jr.*, Albany, and *Riele J. Morgiewicz* for Association of Towns of State of New York and another, amici curiae in the first three above-entitled proceedings. I. Judicial deference to a reasonably elaborated State Environmental Quality Review Act determination, made in accordance with lawful procedures, enables local governments to move forward with es-

sential land use proceedings. (*Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400; *Akpan v Koch,* 75 NY2d 561; *Matter of Cowan v Kern,* 41 NY2d 591.) II. Strict compliance with State Environmental Quality Review Act (SEQRA) procedural provisions requires that judicial review of procedures be limited to those procedures contained in the SEQRA regulations. (*Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400.)

*Shamberg Marwell Davis & Hollis, P.C.,* Mount Kisco (*John S. Marwell, Diana Bunin* and *Carrie E. Hilpert* of counsel), for Building and Realty Institute of Westchester & the Mid-Hudson Region, amicus curiae in the first three above-entitled proceedings. I. This Court should reverse the Appellate Division's decision and order, which hinders development of all housing, including affordable housing, further erodes private property rights, and will result in an array of litigation, rather than the array of housing, as required by this Court. (*Akpan v Koch,* 75 NY2d 561; *Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400; *Matter of Halperin v City of New Rochelle,* 24 AD3d 768; *Berenson v Town of New Castle,* 38 NY2d 102; *Blitz v Town of New Castle,* 94 AD2d 92; *Continental Bldg. Co. v Town of N. Salem,* 211 AD2d 88; *Land Master Montg I, LLC v Town of Montgomery,* 13 Misc 3d 870; *Town of Orangetown v Magee,* 88 NY2d 41.) II. This Court should reverse the Appellate Division's decision and order, which imposes additional nonexistent State Environmental Quality Review Act requirements, as proscribed judicial legislation. (*Clark v Cuomo,* 66 NY2d 185; *Matter of Anonymous,* 40 NY2d 96; *Bright Homes v Wright,* 8 NY2d 157; *Parochial Bus Sys. v Board of Educ. of City of N.Y.,* 60 NY2d 539; *Lawrence Constr. Corp. v State of New York,* 293 NY 634; *Kucher v DaimlerChrysler Corp.,* 9 Misc 3d 45.)

*Sive, Paget & Riesel, PC,* New York City (*Mark A. Chertok* and *Elizabeth Knauer* of counsel), and *Fried, Frank, Harris, Shriver & Jacobson LLP* (*Richard G. Leland* and *Susanna J. Gray* of counsel) for Real Estate Board of New York, Inc., amicus curiae in the first three above-entitled proceedings. I. A supplemental environmental impact statement is not required every time a project or circumstances change. (*Matter of Schodack Concerned Citizens v Town Bd. of Town of Schodack,* 148 AD2d 130; *Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400; *Matter of Village of Tarrytown v Planning Bd. of Vil. of Sleepy Hollow,* 292 AD2d 617; *Matter of C/S 12th Ave.*

*LLC v City of New York,* 32 AD3d 1; *New York Pub. Interest Research Group v Williams,* 127 AD2d 512; *Matter of Howard v Wyman,* 28 NY2d 434; *Matter of City Council of City of Watervliet v Town Bd. of Town of Colonie,* 3 NY3d 508; *Incorporated Vil. of Atl. Beach v Gavalas,* 81 NY2d 322; *Matter of Taxpayers Opposed to Floodmart v City of Hornell Indus. Dev. Agency,* 212 AD2d 958; *Matter of Halperin v City of New Rochelle,* 24 AD3d 768.) II. A lead agency is not required to wait for the completion of permit processes undertaken by involved agencies before making State Environmental Quality Review Act determinations. (*Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400.) III. Requiring a lead agency to solicit comments from involved agencies is inconsistent with State Environmental Quality Review Act procedures and would cause administrative project delays. (*Matter of Gordon v Rush,* 100 NY2d 236.)

*Willis H. Stephens, Jr., Town Attorney,* Brewster, for Planning Board of the Town of Southeast, appellant in the fourth above-entitled proceeding. This Court should reverse the decision and order upon a reversal in *Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast* (32 AD3d 431 [2006]).

*Keane & Beane, P.C.,* White Plains (*Richard L. O'Rourke, Judson K. Siebert* and *Edward J. Phillips* of counsel), and *Chadbourne & Parke LLP,* New York City (*Alan I. Raylesberg* and *Thomas E. Butler* of counsel), for Glickenhaus Brewster Development, Inc., appellant in the fourth above-entitled proceeding. I. This Court should reverse the decision and order upon a reversal in *Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast* (32 AD3d 431 [2006]). II. Petitioners-respondents' claims in their CPLR article 78 petition were properly denied. (*Matter of Gernatt Asphalt Prods. v Town of Sardinia,* 87 NY2d 668; *Matter of Brighton Residents Against Violence to Children v MW Props.,* 304 AD2d 53, 100 NY2d 514; *Matter of Rediker v Zoning Bd. of Appeals of Town of Philipstown,* 280 AD2d 548, 96 NY2d 716; *Matter of Kemp v Zoning Bd. of Appeals of Vil. of Wappingers Falls,* 216 AD2d 466; *Matter of M & M Partnership v Sweenor,* 210 AD2d 575; *Thomas v Brookins,* 175 AD2d 619; *Kessler v Town of Shelter Is. Planning Bd.,* 40 AD2d 1005; *Matter of New York Botanical Garden v Board of Stds. & Appeals of City of N.Y.,* 91 NY2d 413; *Matter of North Country Citizens for Responsible Growth, Inc. v Town of Potsdam Planning Bd.,* 39 AD3d 1098; *Matter of Hauser v Town of Webb,* 34 AD3d 1353.) III. If supplemental environmental review is required for the Meadows at Deans Corners, it should

proceed on a postapproval basis. (*Golden v Metropolitan Transp. Auth.,* 126 AD2d 128; *Chatham Green v Bloomberg,* 1 Misc 3d 434; *Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400.)

*McMillan, Constabile, Maker & Perone, LLP,* Larchmont (*William Maker, Jr.,* and *Gary Kyme* of counsel), for respondents in the fourth above-entitled proceeding. I. *Matter of Ingraham v Planning Bd. of Town of Southeast* (36 AD3d 911 [2007]) is the legitimate offspring of *Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast* (32 AD3d 431 [2006]). (*Matter of Tri-County Taxpayers Assn. v Town Bd. of Town of Queensbury,* 55 NY2d 41; *Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359; *Matter of New York City Coalition to End Lead Poisoning v Vallone,* 100 NY2d 337; *Matter of King v Saratoga County Bd. of Supervisors,* 89 NY2d 341.) II. Respondents-appellants have no one but themselves to blame for what has occurred. (*Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast,* 32 AD3d 431.) III. The Planning Board of the Town of Southeast improperly waived the mandated public hearing. (*Matter of City of Saratoga Springs v Zoning Bd. of Appeals of Town of Wilton,* 279 AD2d 756.) IV. As an administrative body, the Planning Board of the Town of Southeast could not improvise; it had to apply the subdivision regulations as written. (*Marx v Zoning Bd. of Appeals of Vil. of Mill Neck,* 137 AD2d 333; *Purchase Envtl. Protective Assn. v Strati,* 163 AD2d 596.) V. The Planning Board of the Town of Southeast cannot create "boulevards" to bypass the subdivision regulations. (*Matter of North White Auto v Clem,* 229 AD2d 393; *Matter of Tallini v Rose,* 208 AD2d 546; *Matter of New York SMSA Ltd. Partnership v Town of Islip Planning Bd.,* 300 AD2d 307; *Buechel v Bain,* 97 NY2d 295.)

**OPINION OF THE COURT**

Chief Judge KAYE.

At the heart of the two appeals before us is the impact of environmental and regulatory change on a residential development that has been in the planning and review stages for nearly 20 years. The particular question presented is whether the Planning Board of the Town of Southeast, lead agency under the State Environmental Quality Review Act (SEQRA), both took the requisite hard look at project and regulatory changes that arose after the filing of a SEQRA findings statement, and made a reasoned elaboration that a second supplemental environmen-

tal impact statement (SEIS) was not necessary to address those changes. We conclude that the Board did both, and that its determination was not arbitrary or capricious.

## Background

In 1988 Glickenhaus Brewster Development, Inc. submitted an application to the Board seeking subdivision approval for a residential development called the Meadows at Deans Corners. The site spans approximately 309 acres and, in its final form, proposes a cluster development of 104 homes.

After declaring itself lead agency, the Board issued a positive declaration, which determined that the project would likely have a significant impact on the environment, and required the preparation of a draft environmental impact statement (DEIS). Between 1988 and 1991, Glickenhaus submitted a DEIS, final EIS (FEIS), draft SEIS (DSEIS) and final SEIS (FSEIS), which were reviewed by the Board and subject to public comment. On February 25, 1991, the Board issued a SEQRA findings statement determining that SEQRA's requirements had been met and that the project "minimized or avoid[ed] adverse environmental effects to the maximum extent practicable."

These early processes unearthed concern that the development would degrade the quality of the Croton Watershed because Holly Stream, which runs through the site, is a tributary of the Muscoot Reservoir. Additionally, the Town of Southeast lies within the Croton Watershed, which supplies New York City with ten percent of its drinking water. The New York City Department of Environmental Protection (NYCDEP) opposed the initial sewage treatment plan and Glickenhaus substituted a more advanced plan with a subsurface disposal system. The Board's findings acknowledged that treated effluent from the development would flow into Holly Stream and be discharged into the Muscoot Reservoir. The findings also documented Glickenhaus's obligation to develop the advanced treatment plant in conjunction with NYCDEP. The Board granted preliminary subdivision approval on August 10, 1998, and conditional final approval on June 10, 2002.

Petitioners challenged the conditional final approval in a CPLR article 78 proceeding. On February 3, 2003, Supreme Court Justice Francis A. Nicolai annulled the conditional final approval because of the Board's failure to take a hard look at certain areas of environmental concern. Judge Nicolai remitted the matter to the Board to determine whether a second SEIS

was necessary in light of subsequent developments, namely the United States Army Corps of Engineers' (USACE) expansion of the delineated wetlands acreage on the site; the tightened phosphorous regulations for the Muscoot Reservoir; Governor Pataki's designation of the Croton Watershed as a "Critical Resource Water"; the flagging of additional watercourses by NYCDEP not previously shown on the site plan; the realignment of various roadways; the increase of stormwater basins from 9 to 20; the additional traffic development near the site; and the flooding caused by Hurricane Floyd.

After remittal, the chairman of the Board reexamined Meadows' file, which had been supplemented with the local wetlands permit application before the Town of Southeast Conservation Commission and the Town Board; the application for a State Pollutant Discharge Elimination System (SPDES) permit before the New York State Department of Environmental Conservation (NYSDEC); the application for a wetlands activities permit before USACE; and the application for approval of the Stormwater Pollution Prevention Plan (SPPP) before NYCDEP. The Board then reviewed two reports from the Town Conservation Commission's independent wetlands consultant, Stephen Coleman, and another report from Glickenhaus's engineering consultant. Finally, the Board's own environmental and planning consultant examined the file and circulated a draft resolution for Board review. On April 14, 2003, the Board adopted a resolution that a second SEIS was not necessary because "any modifications to the project and any changes [to the regulations] . . . [were] not significant and will not result in any significant adverse environmental impacts . . . ." Conditional final approval was granted, for a second time, on February 23, 2004.

In May 2003 petitioners commenced *Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast*—the first of the two appeals before us—challenging the Board's determination that a second SEIS was not required. In a comprehensive opinion dismissing the petitions, Judge Nicolai concluded that the Board had taken the requisite hard look at the areas of concern and made a reasoned elaboration of its decision not to require a second SEIS. The Appellate Division reversed. Without reflecting the proper standard of review, a divided Appellate Division determined that the Board "could not have met its obligation under SEQRA without requiring a SEIS to analyze the current subdivision plat in light of the change in circumstances since 1991" (32 AD3d 431, 435 [2d Dept 2006]).

The second appeal before us—*Matter of Ingraham v Planning Bd. of Town of Southeast*—commenced in March 2004, challenged the February 2004 conditional final approval on the ground that it violated various subdivision regulations of the Code of the Town of Southeast. Petitioners alleged that the final plat improperly utilized dead-end streets, the application was not "complete" because it did not include all of the required permits and the Board improperly waived a public hearing for final approval. Judge Nicolai found no violation of the Town's subdivision regulations. Although agreeing that no violation of the subdivision regulations had been shown, the Appellate Division annulled the February 2004 conditional final approval based on its August 2006 decision that a second SEIS was required (36 AD3d 911, 912 [2d Dept 2007]). We now reverse the Appellate Division orders and dismiss the petitions.

## Analysis

A lead agency's determination whether to require a SEIS—or in this case a *second* SEIS—is discretionary. The relevant SEQRA regulations provide that:

> "[t]he lead agency *may* require a supplemental EIS, limited to the specific significant adverse environmental impacts not addressed or inadequately addressed in the EIS that arise from: (*a*) changes proposed for the project; (*b*) newly discovered information; or (*c*) a change in circumstances related to the project" (6 NYCRR 617.9 [a] [7] [i] [emphasis added]).

The decision to prepare a SEIS as a result of newly discovered information "must be based upon . . . (*a*) the importance and relevance of the information; and (*b*) the present state of the information in the EIS" (6 NYCRR 617.9 [a] [7] [ii]). In making this fact-intensive determination, the lead agency has the discretion to weigh and evaluate the credibility of the reports and comments submitted to it and must assess environmental concerns in conjunction with other economic and social planning goals (*see* 6 NYCRR 617.1 [d]). The discretion to require a SEIS is distinguished from regulations regarding the preparation of a DEIS or FEIS, which a lead agency must itself prepare or require the applicant to prepare (*see* 6 NYCRR 617.9 [a] [1], [5]).

Judicial review of an agency determination under SEQRA is limited to "whether the agency identified the relevant areas of

environmental concern, took a 'hard look' at them, and made a 'reasoned elaboration' of the basis for its determination" (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 417 [1986] [citations omitted]). This standard of review applies to a lead agency's determination regarding the necessity for a SEIS. It is not the province of the courts to second-guess thoughtful agency decisionmaking and, accordingly, an agency decision should be annulled only if it is arbitrary, capricious or unsupported by the evidence. The lead agency, after all, has the responsibility to comb through reports, analyses and other documents before making a determination; it is not for a reviewing court to duplicate these efforts. As we have repeatedly stated, "[w]hile judicial review must be meaningful, the courts may not substitute their judgment for that of the agency for it is not their role to 'weigh the desirability of any action or [to] choose among alternatives' " (*Akpan v Koch*, 75 NY2d 561, 570 [1990], quoting *Jackson*, 67 NY2d at 416; *see also Matter of Merson v McNally*, 90 NY2d 742, 752 [1997]).

Most of the changes to the proposed plan and the regulations since the Board's issuance of the 1991 SEQRA findings statement concerned the maintenance of the water quality of the Muscoot Reservoir, which lies just south of the Town of Southeast. The Board's requirement of a technologically advanced sewage treatment facility in its 1991 findings statement actually anticipated the regulatory changes that occurred years later. In 1998, the Army Corps of Engineers determined that the actual wetlands acreage impacted by the project was 79.59 acres, instead of the 71.8 acres documented in the findings statement. Then, in 2000, NYSDEC and NYCDEP issued Phase II water quality standards to limit the total maximum daily load (TMDL) of phosphorous into the New York City Water Supply Watershed, which includes the Muscoot Reservoir. The Phase II report indicated that even after applying upstream loading reductions, the designated phosphorous load would be exceeded in the Muscoot Reservoir; therefore, nonpoint source programs would be necessary to achieve the desired reductions. Finally, in 2001, Governor Pataki designated the East of Hudson portion of the New York City Watershed as a Critical Resource Water, thus subjecting the Meadows site to the Army Corps of Engineers' Nationwide Permit Program.

Beginning in 2000, Glickenhaus corresponded with NYCDEP to formulate a suitable Stormwater Pollution Prevention Plan that would comply with NYCDEP's regulations. The Town's

wetlands consultant concluded that the final system proposed by Glickenhaus, including an additional 11 water quality basins, is an advanced system that is designed to comply with the pertinent regulations. The wetlands consultant also concluded that the sewage treatment plant and its treatment system "will eliminate a significant source of non-point pollution sources." Accordingly, the Board determined in its April 2003 resolution that the modifications to the SPPP would result in greater protection of water quality than originally determined in the DEIS, FEIS and initial SEIS, and that neither the modifications to the project nor the new regulations presented a significant adverse impact necessitating a second SEIS.

Other changes made to the project also sought to minimize wetlands impact and comply with existing regulations. Although the USACE determined the amount of wetlands on the Meadows site was approximately 7.79 acres greater than that indicated in the 1991 SEQRA findings statement, the reports concluded that there was a decrease in the wetlands acreage actually impacted by the project. Moreover, the road realignments and culvert system mitigated wetlands impact and were designed to accommodate a 100-year flood event. These changes thereby supported the Board's conclusion that there were no new significant adverse impacts imposed by the increased wetlands acreage, road realignments and flooding caused by Hurricane Floyd.

Lastly, the Board reasonably concluded that the additional developments surrounding the Meadows would not pose significant adverse traffic impacts based on a 1998 traffic impact study with projected results to 2003.

We thus conclude that the Board took a hard look at the areas of environmental concern and made a reasoned elaboration of the basis for its conclusion that a second SEIS was not necessary.[1] The Board relied on the material already in its file, including the DEIS, FEIS and initial SEIS, supplemental reports by

1. The Attorney General directs our attention particularly to a Ninth Circuit opinion issued last month determining that the EPA violated the Clean Water Act by failing to abide by the regulations for issuing a National Pollutant Discharge Elimination System (NPDES) permit (*Friends of Pinto Cr. v United States Envtl. Protection Agency*, 504 F3d 1007 [9th Cir 2007]). Similar to this appeal, the EPA issued TMDLs for a pollutant after public comment on the FEIS and subsequently revised the NPDES permit (504 F3d 1010). The court determined that the supplemental environmental assessment issued by the EPA should have addressed the revised permit and that the EPA Appeals Board should have considered petitioners'

the Town's wetlands consultant and the developer's engineering consultant, as well as its own environmental and planning consultant. The Board's determination that the changes did not present significant adverse environmental impacts and did not require the preparation of a second SEIS was not arbitrary or capricious and is supported by the evidence.

We also reject petitioners' assertion that the Board improperly deferred its SEQRA responsibilities by making the SEIS determination prior to the completion of various permitting processes. A lead agency improperly defers its duties when it abdicates its SEQRA responsibilities to another agency or insulates itself from environmental decisionmaking (*see Akpan*, 75 NY2d at 575; *Matter of Coca-Cola Bottling Co. of N.Y. v Board of Estimate of City of N.Y.*, 72 NY2d 674, 682-683 [1988]). While a lead agency is encouraged to consider the opinions of experts and other agencies, it must exercise its own judgment in determining whether a particular circumstance adversely impacts the environment. Though the SEQRA process and individual agency permitting processes are intertwined, they are two distinct avenues of environmental review. Provided that a lead agency sufficiently considers the environmental concerns addressed by particular permits, the lead agency need not await another agency's permitting decision before exercising its independent judgment on that issue.[2]

Here, the Board's file included the permit applications for wetlands activities, the State Pollutant Discharge Elimination System and the Stormwater Pollution Prevention Plan. These are the very areas of environmental concern upon which the Board allegedly deferred its independent judgment. In addition, the Board reviewed a report by the Town's wetlands consultant that concluded (after reviewing the developer's wetlands permit applications) that the Meadows plan complied with NYCDEP

argument that the EPA failed to take a "hard look" (504 F3d 1017). In the case before us, however, the Southeast Planning Board—unlike the EPA—considered all of the regulatory and planning changes when it determined that a second SEIS was not required.

2. Petitioners' reliance on *Matter of Penfield Panorama Area Community v Town of Penfield Planning Bd.* (253 AD2d 342 [4th Dept 1999]) is misplaced. The Penfield Planning Board insulated itself from the hazardous waste remediation plan and failed to exercise its judgment on the issue (*id.* at 344, 349-350). Here, as shown, the Board considered the environmental issues requiring permits and made an independent judgment that they would not create significant environmental impact.

regulations. The Board's April 2003 resolution indicates a familiarity with the required permits and its mere acknowledgment that the developer would be required to seek approval from the USACE pursuant to the Clean Water Act for wetlands disturbance does not rise to the level of improper deferral. On these facts, the Board, having access to the relevant permit applications and making independent decisions as documented in the April 2003 resolution, was not required to wait for agency permitting decisions before determining whether to require a second SEIS.

Finally, the Board did not have an affirmative obligation to notify or solicit comments from other agencies when determining that a second SEIS was not required (*see* 6 NYCRR 617.9 [a] [7] [iii]). True, SEQRA encourages the open exchange of information between a lead agency and other involved agencies (*see* 6 NYCRR 617.3 [d]-[e]; 617.14 [c])—and for good reason. A lead agency often is not expert in a given area of environmental concern and can benefit from the responses of specialized agencies. However, a lead agency's discretion to solicit comments at this late stage in the SEQRA process must be balanced against SEQRA's mandate that the regulations be implemented "with minimum procedural and administrative delay . . . [and] in the interest of prompt review" (6 NYCRR 617.3 [h]).

While a lead agency's failure to solicit comments before determining that a SEIS is not required may at times evidence the lack of a "hard look," that is not the case here. The Board's involvement in the Meadows project spanned almost 15 years at the time of the SEIS determination. The Board opened public comment periods when it reviewed the DEIS, FEIS and initial SEIS. In addition, the Board took into account expert reports finding that the changes in the project and the regulations posed no significant adverse environmental impact. That the Board did not solicit comments for a second SEIS does not mean that it failed to take a hard look. With an extensive understanding of the Meadows project, the Board properly applied its own discretion.

Finally, in light of our decision in *Matter of Riverkeeper*, we hold that the Appellate Division's decision in *Matter of Ingraham* should be reversed. We agree with the determination of Supreme Court and the Appellate Division that the Town Code's subdivision regulations were not violated when the Board granted conditional final approval in February 2004. Petitioners' remaining arguments have been rendered academic by this opinion.

Accordingly, the orders of the Appellate Division should be reversed, with costs, and the petitions dismissed.

Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

In *Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast:* Order reversed, etc.

In *Matter of Ingraham v Planning Bd. of Town of Southeast:* Order reversed, with costs, and petition dismissed.