■ In the Matter of RESIDENTS FOR REASONABLE DEVELOPMENT et al., Appellants, v CITY OF NEW YORK et al., Respondents. [11 NYS3d 116]—

Order and judgment (one paper), Supreme Court, New York County (Alexander W. Hunter, Jr., J.), entered July 30, 2014,

denying the petition to annul the city respondents' determination, dated December 18, 2013, which approved the proposed East 74th Street project for Memorial Hospital for Cancer and Allied Diseases (the clinical arm of Memorial Sloan-Kettering Cancer Center and hereinafter MSK) and the City University of New York (CUNY) (collectively, MSK-CUNY), and dismissing the proceeding brought pursuant to CPLR article 78, unanimously affirmed, without costs.

Upon our review of the record, we find that the city respondents took the requisite "hard look" at the relevant areas of environmental concern, in particular the project's anticipated adverse environmental impacts, and provided a "reasoned elaboration" of the basis for their approval of the project. Their determination is not arbitrary and capricious and is supported by the evidence (*see Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast*, 9 NY3d 219, 231-232 [2007]; *Akpan v Koch*, 75 NY2d 561, 570 [1990]).

Contrary to petitioners' contention, the Final Environmental Impact Statement (FEIS) was not required to consider the potential environmental impacts of the planned construction of a garage 50 blocks from the main project site and the FEIS detailed the factors considered commensurate with the circumstances and nature of the proposal. While the project and the garage exist by virtue of the same request for proposals and contract, they are two separate, independent projects that share no common purpose and are not part of a larger plan of development. Thus, the ongoing separate environmental review of the garage is proper (*compare Matter of Friends of Stanford Home v Town of Niskayuna*, 50 AD3d 1289 [3d Dept 2008], *lv denied* 10 NY3d 716 [2008], *with Matter of Village of Westbury v Department of Transp. of State of N.Y.*, 75 NY2d 62, 69 [1989]).

Although City Environmental Quality Review [CEQR], as authorized by and in implementation of the State Environmental Quality Review Act (ECL art 8 [SEQRA]) requires that each FEIS include an analysis of a "No Action" alternative as though the project were not being constructed and existing conditions on the project would remain unchanged, the FEIS was not required to consider petitioners' preferred alternative scenario of residential development at the project site, because that scenario would not have met the objectives and capabilities of MSK-CUNY, the project sponsor (*see* Department of Environmental Conservation Regulations [6 NYCRR] § 617.9 [b] [5] [v]; *see also Matter of C/S 12th Ave. LLC v City of New York*, 32 AD3d 1, 5 [1st Dept 2006] ["Not every conceivable environmen-

tal impact, mitigating measure or alternative must be addressed"]).

The determination granting the zoning map and text amendments as well as the special permit applications is supported by substantial evidence sufficient to evince its rationality (*see Kettaneh v Board of Stds. & Appeals of the City of N.Y.*, 85 AD3d 620, 621 [1st Dept 2011], *lv dismissed in part, denied in part* 18 NY3d 919 [2012]). Contrary to petitioners' contention, the zoning map amendment does not constitute illegal spot zoning merely because it involves a single parcel only and is not ad hoc zoning legislation affecting the land of a few without proper regard to the needs or design of the community as a whole (*see Matter of Town of Bedford v Village of Mount Kisco*, 33 NY2d 178, 187-188 [1973]). The record establishes that the zoning change is part of "a well considered and comprehensive plan to serve the general welfare of the community" (*see Collard v Incorporated Vil. of Flower Hill*, 52 NY2d 594, 600 [1981]).

The City's use of incentive zoning is well within its broad authority and is proper (*see Asian Ams. for Equality v Koch*, 72 NY2d 121, 129 [1988]). Nor is the payment for nearby parkland an illegal "quid pro quo" for specific floor area ratio; the funds are being paid directly to the Department of Parks so that it can perform the improvements (*compare Matter of Municipal Art Socy. of N.Y. v City of New York*, 137 Misc 2d 832 [Sup Ct, NY County 1987] [improper quid pro quo found where funds were to be paid into City's general operating account]).

The Manhattan Borough Board's approval of the project is properly the result of a vote by a majority of the board members present and entitled to vote (*see* NY City Charter §§ 85 [c], [d]; 384 [b] [4]). While all 12 board members were present, one member recused herself; six (of 11) votes (in favor) constitutes a majority. There is no basis in the record for finding the recusal improper or for deeming that the member abstained, rather than recused herself, from voting. Concur—Tom, J.P., Sweeny, Andrias, Moskowitz and Gische, JJ.