Matter of 301 E. 66th St. Condominium Corp. v City of New York (2024 NY Slip Op 00596)

Matter of 301 E. 66th St. Condominium Corp. v City of New York

2024 NY Slip Op 00596

Decided on February 06, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 06, 2024

Before: Singh, J.P., Moulton, Gesmer, Mendez, Rodriguez, JJ. 

Index No. 152464/22 Appeal No. 1596 Case No. 2023-00991 

[*1]In the Matter of 301 East 66th Street Condominium Corp., Petitioner-Appellant,
v
The City of New York et al., Respondents-Respondents.

Mikhail Y. Sheynker, Brooklyn, for appellant.
Sylvia O. Hinds-Radix, Corporation Counsel, New York (MacKenzie Fillow of counsel), for municipal respondents.
Fried, Frank, Harris, Shriver & Jacobson, LLP, New York (Janice Mac Avoy of counsel), for New York Blood Center, Inc., respondent.

Judgment (denominated an order), Supreme Court, New York County (Arlene P. Bluth, J.), entered August 23, 2022, which denied the petition to annul the City respondents' November 23, 2021 approval of the applicant respondent New York Blood Center's rezoning and special permit applications as arbitrary and capricious, granted the City respondents' cross-motion and Blood Center's motion to dismiss petitioner's declaratory judgment cause of action alleging that the approval was unconstitutional spot zoning, and dismissed this proceeding brought pursuant to CPLR articles 30 and 78, unanimously affirmed, without costs.
The City respondents appropriately "'identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for its determination'" (Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast, 9 NY3d 219, 231-232 [2007], quoting Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417 [1986]). Agencies have "considerable latitude in evaluating environmental effects and choosing among alternatives" (Matter of Friends of P.S. 163, Inc. v Jewish Home Lifecare, Manhattan, 30 NY3d 416, 430 [2017], quoting Matter of Jackson, 67 NY2d at 417).
The environmental impact statement (EIS) followed the methodology of the 2020 City Environmental Quality Review Technical Manual (Manual). Thereunder, "[t]he environmental assessment examines the incremental differences between the [reasonable worst case development scenario] of the future without the project in place (No-Action condition) and the future with the project in operation (With-Action condition)." Here, that no-action condition involved Blood Center constructing a new six-story as-of-right facility, containing the same Biosafety Level 3 (BSL-3) laboratory proposed in its with-action condition — both of which would replace and modernize Blood Center's current BSL-3 laboratory. In comparing the proposal with this "reasonable alternative[]" as required (see State Envtl Quality Review Regs [6 NYCRR] § 617.9[b][5][v]), the City respondents rationally determined that there would be no "increase [in] exposure" between the two scenarios, given the EIS explanation that the BSL-3 laboratory in the proposed project would be built in Blood Center's portion of the facility for its own use and classified as UG4, just as it would be in the no-action scenario (see NYC Zoning Resolution 22-14). Notably, the EIS shows that the special permit for scientific research and development facilities was sought for the planned commercial lab spaces in higher floors, not Blood Center's own facilities. Thus, even if "catastrophic impacts" are "reasonably foreseeable," which the City respondents and Blood Center dispute, any "unavailable" information concerning such impacts was not "essential to an agency's SEQRA finding," since there was no difference in risk between the with-action and no-action conditions (6 NYCRR 617.9[b][6]).
Supreme Court [*2]also properly dismissed the declaratory judgment claim seeking to find that the zoning and special permit approvals constituted spot zoning (CPLR 3211[a][7]). Spot zoning is "the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners" (Rodgers v Village of Tarrytown, 302 NY 115, 123 [1951]; see also Matter of C/S 12th Ave. LLC v City of New York, 32 AD3d 1, 9 [1st Dept 2006]). "The vice of spot zoning is its inevitable effect of granting to a single owner a discriminatory benefit at the expense and to the detriment of his neighbors, without any public advantage or justification" (Thomas v Town of Bedford, 11 NY2d 428, 435 [1962]). The "relevant inquiry" is whether challenged action "was accomplished for the benefit of individual owners rather than pursuant to a comprehensive plan for the general welfare of the community" (Rodgers, 302 NY at 124; see also Asian Ams. for Equality v Koch, 72 NY2d 121, 131 [1988]).
Here, the rezoning in question did not constitute spot zoning benefitting only one property owner. Rather, "it brought other existing properties with nonconforming lots [i]n the rezoned [area]" — specifically, the building on the west side of Second Avenue housing a movie theater — "into conformity, and was also 'part of a well-considered and comprehensive plan calculated to serve the general welfare of the community'" (Matter of Douglaston Civic Assn. v City of New York, 199 AD3d 562, 563 [1st Dept 2021], quoting Matter of Preserve Our Brooklyn Neighborhoods v City of New York, 188 AD3d 500, 501 [1st Dept 2020]; compare Matter of Residents for Reasonable Dev. v City of New York, 128 AD3d 609, 611 [1st Dept 2015] [zoning map amendment of single lot was not spot zoning where it was part of well-considered plan serving general welfare of community]). Indeed, the project serves the City's plans to encourage the life sciences industry by enhancing existing synergies between the Blood Center and several hospitals and research institutions, and by increasing employment opportunities in the field.
There was no need for Supreme Court to convert the motions to dismiss into summary judgment motions on notice, as the petition, exhibits, and affidavits in support thereof demonstrate that petitioner does not have a cause of action for spot zoning (see CPLR 3211[c]; Leon v Martinez, 84 NY2d 83, 88 [1994]). In any event, petitioner failed "to serve a summons in addition to the notice of petition, and a combined petition/complaint" (Matter of New York Times Co. v City of N.Y. Police Dept., 103 AD3d 405, 407 [1st Dept 2013], lv dismissed 21 NY3d 930 [2013], lv denied 22 NY3d 854 [2013]).
We have considered petitioner's remaining contentions and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 6, 2024[*3]