■ In the Matter of DEVELOP DON't DESTROY (BROOKLYN), INC., et al., Respondents, v EMPIRE STATE DEVELOPMENT CORPORATION et al., Appellants. In the Matter of PROSPECT HEIGHTS NEIGHBORHOOD DEVELOPMENT COUNCIL, INC., et al., RESPON-

DENTS, v EMPIRE STATE DEVELOPMENT CORPORATION et al., Appellants. [942 NYS2d 477]—

Judgment, Supreme Court, New York County (Marcy S. Friedman, J.), entered July 19, 2011, insofar as appealed from, granting the supplemental petitions to the extent of remanding the matter to respondent Empire State Development Corporation (ESDC) to prepare a Supplemental Environmental Impact Statement (SEIS) assessing the environmental impact of delay in phase II construction of the Atlantic Yards Arena Redevelopment Project and to make further findings on whether to approve the 2009 Modified General Project Plan for phase II of the project, unanimously affirmed, without costs.

The Atlantic Yards Arena and Redevelopment Project is to be constructed in two phases. Phase I encompasses the construction of a sports arena, a new MTA/Long Island Rail Road rail yard, and improvements in transit access, including a new subway entrance. Phase II encompasses the construction of 11 of the Project's 16 high-rise commercial and residential buildings. In 2006, ESDC prepared a Final Environmental Impact Statement (FEIS) based on the 2006 Project Plan, using a 2016 build year (the year by which phase II is predicted to be "substantially operational" [see Matter of Develop Don't Destroy (Brooklyn) v Urban Dev. Corp., 59 AD3d 312, 318 (2009), lv denied 13 NY3d 713 (2009)]). The 2009 Modified General Project Plan (MGPP) for the Project was written after the downturn in the real estate market and the related unavailability of bank financing left respondent Forest City Ratner Companies (FCRC), the project developer, unable to meet its obligation under the 2006 Plan to acquire the entire 22-acre site at the inception of the Project.

Pursuant to the MGPP, FCRC is required to acquire at the inception of the Project only the portion of the site needed for the construction of the arena. It has until 2030 to obtain all the property interests necessary for phase II construction. Moreover, in a development agreement executed after the MGPP was approved by ESDC, FCRC was given until 2035 to substantially complete phase II construction. The development agreement sets forth no specific commencement dates for the construction, other than for the construction of the platform on which six of the 11 phase II buildings will be built, which is not required to be commenced until 2025, and the construction of one phase II building on block 1129, which is not required to be "initiated" until 2020.

However, in assessing the potential environmental impacts of the changes to the Project wrought by the MGPP, ESDC used a build date based on the same 10-year completion schedule for the Project as was used in the 2006 Plan, and determined that it was not required to prepare a SEIS before approving the MGPP.

We agree with Supreme Court that ESDC's use of a 10-year build date under these circumstances lacks a rational basis and is arbitrary and capricious.

When it approved the MGPP, ESDC was aware that, under a new agreement with the MTA, FCRC had until 2030 to acquire the air rights necessary for the phase II construction. ESDC knew that the then forthcoming development agreement would provide for a significantly extended substantial completion date of 2035, 25 years from then, for the phase II construction. Moreover, ESDC has acknowledged that it is unlikely that the Project will be constructed on a 10-year schedule because the construction lagged behind the schedule provided in 2009 and because of continuing weak general economic conditions. When it approved the MGPP, ESDC certainly was aware that the same economic downturn that necessitated the negotiation of new agreements would prevent a 10-year build-out.

Nevertheless, ESDC relied on a provision in the MGPP and, later, in the development agreement that required FCRC to use "commercially reasonable efforts" to meet the 10-year deadline and complete the Project by 2019 (there had been a shift in the 10-year estimated construction schedule from 2016 to 2019). ESDC also maintained that FCRC had a financial incentive to complete the Project by 2019. However, the term "commercially reasonable efforts" is not defined in either the MGPP or the development agreement. While the development agreement provides specific dates for the construction of the arena and phase I buildings, it does not provide specific commencement dates for phase II construction, other than those noted above, and, while it provides for damages for delays in phase I construction, it does not provide for significant financial penalties for delays in phase II construction. Moreover, respondents failed to show that FCRC had the financial ability to complete the Project in 10 years.

Contrary to FCRC's contention, Supreme Court properly considered the development agreement, although the agreement did not yet exist when ESDC approved the MGPP (*see Matter of Featherstone v Franco*, 95 NY2d 550, 554 [2000]). ESDC repeatedly informed the court that it relied on the terms of the development agreement in approving the MGPP. Thus, it was

necessary that the court review the development agreement to conduct a meaningful review of ESDC's determination. Indeed, the court found that the development agreement made meaningful review possible by "correct[ing] ESDC's incomplete representations concerning the Agreement's terms regarding construction deadlines and their enforcement."

We further agree with Supreme Court that ESDC failed to take a "hard look" at the relevant areas of environmental concern and failed to make a "reasoned elaboration" of the basis for its determination that it was not required to prepare an SEIS before approving the MGPP (see Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast, 9 NY3d 219, 231-232 [2007] [citation omitted]; Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417 [1986]).

ESDC relied on its 2009 Technical Memorandum, which used a build date of 2019, based on a shift in the 10-year estimated construction schedule from 2016 to 2019, and analyzed certain environmental impacts beyond that only until 2024. Despite ESDC's cognizance of the essential new terms in the development agreement, the Technical Memorandum did not consider the changes in the Project schedule, which provided for construction beyond 2019—indeed, potentially to 2035. Thus, the Technical Memorandum failed to consider the "Reasonable Worst Case Development Scenario," as required by the City Environmental Quality Review (CEQR) Technical Manual (at ch 2). Moreover, ESDC maintained that the construction impacts of a 10-year build-out would be the same as or even more severe than the construction impacts of a 25-year build-out because the construction would be less "intense" if it were delayed. However, the Technical Memorandum contained no comparison of the environmental impacts of "intense" construction over a 10-year period with the environmental impacts of construction that continues for 25 years.

In 2010, in response to a prior court order in these proceedings, ESDC prepared a "Technical Analysis of an Extended Build-Out of the Atlantic Yards Arena and Redevelopment Project," which concluded that a 2035 build-out would have no significant adverse environmental impacts that were not addressed in the FEIS for the 2019 build-out. The Technical Analysis provides no more support for ESDC's determination than the Technical Memorandum did. Its conclusion is not based on any technical studies of the environmental impacts of protracted construction. It is supported by the mere assertion that the build-out will result in prolonged but less "intense" construction and that most environmental impacts are driven by intensity rather than duration.

Moreover, the Technical Analysis assumed that phase II construction would not be stalled or deferred for years and that it would proceed continuously on a parcel-by-parcel basis. Thus, it failed to consider an alternative scenario in which years go by before any phase II construction is commenced—a scenario in which area residents must tolerate vacant lots, above-ground arena parking, and phase II construction staging for decades.

ESDC relies on mitigation measures adopted to address the impacts found in the FEIS in 2006. However, the Technical Analysis did not consider whether those measures were adequate in the case of a protracted period of construction.

We have considered respondents' remaining contentions and find them unavailing. Concur—Mazzarelli, J.P., Friedman, Acosta, Freedman and Abdus-Salaam, JJ. **[Prior Case History: 33 Misc 3d 330.]**