OPINION OF THE COURT
Meyer, J.
The determination of the Superintendent of Insurance that the Security Fund established by section 334 of the Insurance Law does not cover an insured’s claim against its insolvent liability insurer resulting from the insured’s contractual or common-law liability to indemnify a third party held responsible for injury to the insured’s employee is neither contrary to the clear wording of the Insurance Law nor unreasonable. The Appellate Division’s order, which upheld the superintendent’s determination, should, therefore, be affirmed.
I
Claimant Arcade Cleaning Contractors, Inc. (Arcade), contracted with the New York Daily News Syndicate (Daily News) to perform cleaning work. Under the contract Arcade obligated itself to indemnify the Daily News against liability “on account of injury to persons * * * arising out of, or in any manner connected with, the performance of this Contract” including injury to an Arcade employee.
Jeanne Gerard, an Arcade employee, sued the Daily News for injuries allegedly sustained in an elevator on its premises in the course of her employment with Arcade. The Daily News claimed over against Arcade, seeking indemnification based on both the contract clause and common-law principles. Arcade carried general liability *6 insurance with Consolidated Mutual Insurance Company (Consolidated) under a policy which covered both the contractual and common-law indemnification claims. Its workers’ compensation coverage was with the State Insurance Fund.
Consolidated undertook the defense of the third-party claim over on behalf of Arcade, but in May, 1979, was placed in liquidation by the Superintendent of Insurance. Defense of the claim over was thereafter provided by the Insurance Department’s Liquidation Bureau, but Arcade was notified that the New York State Property and Liability Insurance Security Fund (Security Fund) was not empowered to pay any judgment that might eventuate against Arcade on the claim over.
In January, 1981, the Gerard action was settled for $2,500 of which $1,000 was to be paid by the Daily News and $1,500 by Arcade, without prejudice, however, to Arcade’s claim against the Security Fund for reimbursement of its $1,500 payment.[1] Supreme Court, Kings County, in which the Consolidated liquidation proceeding had been brought, referred Arcade’s claim to a referee, who concluded that the claim was not covered by the Security Fund and recommended its disallowance. Supreme Court, however, on the superintendent’s motion to confirm, reasoning that only a direct compensation claim and not a third-party indemnification claim was outside the scope of section 334 of the Insurance Law, denied the motion and allowed the claim. The Appellate Division reversed in turn.
II
Section 334, which established the Security Fund for use in paying property and liability claims remaining unpaid by reason of the insurer’s insolvency, details in subdivision 2 the kinds of claims payable from the fund.[2] Of importance *7 to the determination of the present controversy is that clause (a) of paragraph (ii) includes insurance specified in subdivision 13 but not that specified in subdivision 15 of section 46 of the Insurance Law. Subdivision 13’s definition* *[3] of personal injury liability insurance as “insurance against legal liability * * * arising out of the death or injury of any person” is clearly broad enough to include a claim over for contribution or indemnification, but expressly excludes “any kind of insurance specified in subdivision fifteen.” However, subdivision 15, which defines “workmen’s compensation and employer’s liability insurance” to mean “insurance against the legal liability, whether imposed by common law or by statute or assumed by contract, of any employer for the death or disablement of, or injury to, his or its employee” (emphasis supplied) is also, as the italicized words establish, phrased broadly enough to include contribution and indemnification claims. We are, thus, required to review the superintendent’s determination in light of the Legislature’s intent with respect to coverage by the Security Fund when it *8 included subdivision 13 claims but excluded subdivision 15 claims.
In view of the ambiguity evident from a reading of the relevant statutory provisions, the superintendent’s determination does not run “counter to the clear wording of a statutory provision” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459). He is, moreover, vested by sections 10 and 21 of the Insurance Law “with broad power to interpret, clarify, and implement the legislative policy” embodied in that law (Ostrer v Schenck, 41 NY2d 782, 785; Breen v Cunard Lines S.S. Co., 33 NY2d 508, 511) whether by regulation or by a ruling such as is involved in the instant case.[4] His determination will be upheld, therefore, unless irrational or unreasonable (Matter of Eastern Milk Producers Coop. Assn. v State of New York Dept. of Agric. & Markets, 58 NY2d 1097; Matter of Howard v Wyman, 28 NY2d 434).
That the superintendent’s conclusion is neither irrational nor unreasonable becomes evident when the provisions of the Insurance Law and the Workers’ Compensation Law are more closely examined. Evident from a review of subdivision 2 of section 334 is that claims within subdivision 15 were not intended to be paid from the Security Fund it established, not only because clause (a) of paragraph (ii) omitted that subdivision from its list of included risks but also because clause (b) of paragraph (ii) and paragraph (iv) by specifically including other risks covered by the Workers’ Compensation Law made it clear that the omission was intentional.[5] There is, moreover, no irreconcilable inconsistency between subdivisions 13 and 15 of section 46. Subdivision 15 is limited to claims, whether original or third party, for injury or death of an *9 employee, while subdivision 13 covers claims, whether original or third party, arising out of injury or death of any person other than an employee, as its final clause makes indelibly clear. The exclusion from subdivision 13 of insurance specified in subdivision 15 and the omission of subdivision 15 from subdivision 2 of section 334 necessarily excludes from the security fund established by section 334 the insurance against liability “assumed by contract, of any employer for * * * injury to, his or its employee” which is authorized by subdivision 15.[6]
III
Arcade and amicus argue, nevertheless, that the Security Fund covers Arcade’s claim because (1) subdivision 15 covers only an employee’s direct claim against his employer, (2) it is inconsistent to assess a subdivision 13 insurer such as Consolidated for contribution to the Security Fund but exclude a claim under that policy from coverage by the fund, and (3) the legislative history shows that the fund was intended to protect policyholders and claimants in all lines of property and liability insurance. None of those contentions furnishes a basis for overturning the superintendent’s determination.
The direct claim argument is based in part upon the distinction between claims for indemnity and for injury to an employee and in part on the fact that an employer may contract to provide compensation or employer’s liability coverage to persons not protected by the Workers’ Compen *10 sation Law and the Employer’s Liability Law. The short answer to the first is that the cases relied upon (Insurance Co. of North Amer. v Dayton Tool & Die Works, 57 NY2d 489; Graphic Arts Mut. Ins. Co. v Bakers Mut. Ins. Co. of N. Y., 45 NY2d 551, supra; Green Bus Lines v Consolidated Mut. Ins. Co., 74 AD2d 136, mot for lv to app den 52 NY2d 701) construed the contractual indemnity exclusion in an insurance policy whereas we are construing a statutory exclusion from the Security Fund of claims for death of or injury to an employee whether liability is “imposed by common law or by statute or assumed by contract”. Not only are the governing rules of construction entirely different, but also the language being construed and the context in which it was used differs materially in the two situations. As for the second contention it is enough to note that the words “assumed by contract” are broad enough to encompass not only contracts that fill gaps in the two laws referred to but also a contract of indemnity such as is here involved.
The absence of provision for proration of assessment to exclude so much of Consolidated’s premium as was allocable to a third-party claim resulting from injury to an insured’s employee is no greater help to Arcade. The Security Fund does not cover risks located or resident in States other than New York or claims in excess of $1,000,000 or claims by a person owning more than 10% of the insolvent carrier (Insurance Law, § 334, subd 2; Matter of Interstate Ins. Co. [Murphy Pacific Mar. Salvage Corp. (Merritt Div.)], 47 NY2d 909), but no provision is made for proration as to such risks. Indeed the only limitations upon the “net direct written premiums” on which assessment is based are that it be for the kinds of insurance enumerated in section 334 (subd 2, par [ii]) and that insurance within the motor vehicle liability Security Fund established by section 333 be excluded. Therefore, the failure to prorate for such third-party indemnity claims affords no basis for inferring a legislative intent to require payment of them from the Security Fund.
The legislative history to which claimant and amicus point contains statements that support the contention that *11 all property-liability policyholders would be protected after establishment of the Security Fund. Thus the Executive Department memorandum which presented the bill to the Legislature stated (McKinney’s Session Laws of NY, 1969, p 2394): “Although few insurers doing business in New York have become insolvent in the past thirty years, it is impossible to eliminate insolvencies altogether. Where insolvency occurs, however, the policyholder or claimant should not have to bear the loss. Legislation recognizing this principle has already been adopted with respect to life, workmen’s compensation and automobile liability insurance. This bill would extend such protection to policyholders in the other property-liability lines. The bill would make New York the only state to provide its residents with an effective guarantee against loss due to insurance company insolvency in all property liability lines” and an equally strong statement appears in the Governor’s message on the approval of the bill (McKinney’s Session Laws of NY, 1969, p 2544).[7] Based on these statements it is argued that subdivision 15 was omitted from the subdivision 2 listing only because the direct claims it embraced were already covered by other security funds established by sections 76, 107 and 109-d of the Workers’ Compensation Law.
The argument proves too much. Also omitted from subdivision 2 of section 334 as originally enacted was any reference to subdivision 3 of section 46 of the Insurance Law which defines “accident and health insurance” to include “insurance providing disability benefits pursuant to article nine of the work[er]’s compensation law.” Not until the 1980 amendment of section 334 (L 1980, ch 784) were disability benefit insurance claims covered by the *12 section 334 Security Fund. Moreover, although the stock workmen’s (sic) compensation security fund created by section 107 of the Workers’ Compensation Law and the mutual workmen’s (sic) compensation security fund created by section 109-d of the Workers’ Compensation Law cover only claims for “compensation and benefits provided by” the compensation law (i.e., direct claims), subdivision 1 of section 76, which creates the State Insurance Fund, as already noted, covers not only direct claims but also claims based upon “liability other than liability assumed by contract imposed upon employers by reason of a suit or claim brought against the employer * * * to recover the amount of damages obtained from such other by an employee of the employer for injuries or * * * death sustained by such employee arising out of and in the course of his employment” (i.e., third-party claims for indemnification or contribution other than those assumed by contract), and has included such claims since 1951 or before. Further, even with respect to covered lines the Security Fund does not cover all claims: risks located or resident out of State, those exceeding $1,000,000 and those of major investors in the insurance carrier are expressly left unprotected (Insurance Law, § 334, subd 2; see Matter of Professional Ins. Co. of N. Y. [Superintendent of Ins. of State of N. Y.], 49 NY2d 716, affg on opn below 67 AD2d 850; Matter of Interstate Ins. Co. [Murphy Pacific Mar. Salvage Corp. (Merritt Div.)], 47 NY2d 909, supra).
The discrepancies between claimant’s thesis and the statute as enacted make it evident that at most we are dealing with a legislative omission that should not be supplied by us (Matter of McNerney v City of Geneva, 290 NY 505, 511; McKuskie v Hendrickson, 128 NY 555, 558; McKinney’s Cons Laws of NY, Book 1, Statutes, § 363).[8] The superintendent’s determination is, thus, neither arbitrary nor unreasonable. The Appellate Division’s order should, therefore, be affirmed.
*13 Chief Judge Cooke and Judges Jasen, Jones, Wachtler and Simons concur.
Order affirmed, with costs.

. Not in issue here is Arcade’s right to claim in the liquidation proceeding as a general creditor of Consolidated. Nor is any question raised before us concerning the effect of section 5-322.1 of the General Obligations Law, on Arcade’s contractual obligation (see Quevedo v City of New York, 56 NY2d 150, mot for rearg den 57 NY2d 674).

. The subdivision reads as follows: “The property and liability insurance security fund shall be used in the payment of allowed claims remaining unpaid, in whole or in *7 part, by reason of the inability due to insolvency of an authorized insurer to meet its insurance obligations under policies (i) on account of claims from motor vehicle accidents as defined in subdivision one of section three hundred thirty-three, (ii) (a) in all of the kinds of insurance specified in subdivisions four, five, six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, sixteen, seventeen, nineteen, twenty and twenty-one of section forty-six with respect to coverage of property or risks located or resident in this state, and (b) in the kind of insurance providing disability benefits pursuant to article nine of the workers’ compensation law issued by an authorized insurer licensed under article ten, eleven-A or eleven-B, or a reciprocal insurer licensed under article twelve of this chapter, with respect to coverage of risks located or resident in this state, (iii) in the insurance provided by the medical malpractice insurance association, (iv) in the insurance provided pursuant to subdivision two-a of section seventy-six of the workers’ compensation law if and when operative and (v) including any obligation for the return of unearned premiums on any policy specified in clauses (i), (ii), (iii) and (iv). No such payment from the property and liability insurance security fund shall, however, be made to any person who owns or controls ten per cent or more of the voting securities of the insolvent insurer and no payment on any one claim shall exceed one million dollars.”

. The subdivision reads: “ ‘Personal injury liability insurance,’ meaning insurance against legal liability of the insured, and against loss, damage or expense incident to a claim of such liability, and including an obligation of the insurer to pay medical, hospital, surgical and disability benefits to injured persons, and funeral and death benefits to dependents, beneficiaries or personal representatives of persons who are killed, irrespective of legal liability of the insured, arising out of the death or injury of any person, or arising out of injury to the economic interests of any person as the result of negligence in rendering expert, fiduciary or professional service, but not including any kind of insurance specified in subdivision fifteen.”

. That conclusion makes it unnecessary to consider the superintendent’s arguments based upon the powers granted him by subdivision 24 of section 46 and by subdivisions 3, 4 and 5 of section 334.

. The more is this so in view of the fact that as originally enacted by chapter 189 of the Laws of 1969, subdivision 2 included only so much of the present subdivision as is contained in paragraph (i) and clause (a) of paragraph (ii). The rest of the subdivision, including the provisions referred to in the text, was added by chapter 109 of the Laws of 1975, chapter 615 of the Laws of 1976, and chapter 784 of the Laws of 1980.

. That the standard compensation policy issued when section 334 was adopted excluded liability assumed by contract “because such assumed liability is not liability imposed by law” (Millus & Gentile, Workers’ Compensation Law and Insurance, p 313) is irrelevant. Subdivision 15 authorizes compensation insurers to cover “liability, whether imposed by common law or by statute or assumed by contract” and it is insurance of the kind specified in subdivision 15, not what the carriers issue under that authorization, that is excluded from subdivision 13 and, therefore, from the Security Fund created by section 334. Likewise unpersuasive is the fact that, for reasons as to which its legislative history provides no insight, chapter 306 of the Laws of 1951, which made clear the right of the State Insurance Fund to continue writing coverage for the third-party liability of employers specifically excluded from that authorization “liability assumed by contract” (Workers’ Compensation Law, § 76, subd 1). At most these are factors creating ambiguity in the statutes construed by the superintendent, and his interpretation not being irrational or unreasonable is to be upheld (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459).

. “The bill extends insolvency protection to policyholders and claimants in all lines of property and liability insurance. New York thus becomes the first state to guarantee its residents against loss due to insurance company insolvency in all property-liability lines”. (See, also, Report of the Insurance Department to Governor Rockefeller [Jan. 7, 1969]: The Public Interest Now in Property and Liability Insurance Regulations, p 15; Statement by Superintendent of Insurance, Richard E. Stewart, before the Joint Legislative Committee on Insurance Rates and Regulation, pp 4-5; Report of Joint Legislative Committee on Insurance Rates, Regulation and Recodification of the Insurance Law and Related Statutes, Legis Doc [1969] No. 9A, 44.)

. Our affirmance on the opinion at the Court of Claims (81 Misc 2d 402) in Dutchess & Columbia Coop. Ins. Co. v State of New York (36 NY2d 835) is not to the contrary, for that case concerned no contraindicative statutes and upheld as not unreasonable or irrational the superintendent’s construction of section 334 as covering co-operative fire insurance companies and thus requiring that they contribute to the Security Fund.