OPINION OF THE COURT
Smith, J.
This case concerns a determination by the Superintendent of Insurance to deny coverage of petitioner’s claim under the New York Property/Casualty Insurance Security Fund (Security Fund). Under its broad powers to interpret the Insurance Law and administer the fund established to provide coverage for insureds of insolvent insurance companies, the Superintendent has determined that the insured must relinquish physical possession and control of the subject property in New York for property claims to qualify for coverage under the Security Fund. Here, the Superintendent denied coverage upon a determination that petitioner relinquished physical possession of the defective products in Rhode Island when it placed the goods in the hands of a common carrier for delivery to the buyer’s plant in New York.
However, the Insurance Law provides that Security Fund coverage attaches to "a claim based upon a policy insuring property or risks located or resident in this state” (Insurance Law § 7602 [g]). Since it is undisputed that New York was the final destination of the delivered property and the claim arose from the property’s physical presence in this State, the requirement contained in the plain language of the statute — that "property * * * [be] located * * * in this state” — is satisfied under the facts presented. The. Superintendent’s resort to a locus test based upon the relinquishment of physical possession and control is manifestly inconsistent with the statutory mandate. Accordingly, the Superintendent’s determination should be annulled as, arbitrary and capricious and the order of the Appellate Division should be affirmed.
In 1977, Niagara Mohawk Power Corporation purchased from petitioner’s subsidiary Gulf & Western Manufacturing, *511 eight main steam isolation valve (MSIV) systems for use in the Nine Mile Point nuclear power station in Scriba, New York. MSIVs are custom-designed safety components used in nuclear power plants to regulate the flow of radioactive steam from the reactor vessel to the steam turbine. As stated in the pleadings of the underlying action, MSIVs are meant to "ensure that in the event of certain nuclear accidents harmful amounts of radioactive materials would not be discharged into the environment.” According to Niagara Mohawk, the Nine Mile Point power station could not "be licensed for full power operations until the MSIV system” met "performance criteria” mandated by the United States Nuclear Regulatory Commission (NRC). It is undisputed that the MSIVs at issue were intended to be an integral and permanent part of the nuclear facility located in Scriba, New York.
The subject valve systems were constructed at petitioner’s facility in Rhode Island and delivered to Niagara Mohawk’s nuclear power plant via common carrier hired by petitioner. The purchase order expressly called for petitioner to design, furnish and deliver the MSIVs "FOB — Jobsite, Scriba, New York.” However, the MSIVs contained a design defect which was discovered in 1984 by Niagara Mohawk during testing. Despite substantial reengineering efforts, the defect could not be eliminated and plant operation was delayed until Niagara Mohawk could procure and prepare an alternative valve system which would meet NRC approval. To recover its alleged damages, Niagara Mohawk commenced an action against petitioner which petitioner ultimately settled for $36 million.
During the relevant period, petitioner carried liability insurance from numerous insurance companies in varying layers of coverage — primary, umbrella and excess coverage — as protection against potential risks arising out of its products. Among these were excess insurance policies with Integrity Insurance Company under which Integrity would have to pay its proportionate share of petitioner’s settlement with Niagara Mohawk. However, Integrity was declared insolvent in 1987 and eventually became the subject of liquidation proceedings.
In March 1988, petitioner filed a timely claim with respect to the action against it for the MSIVs purchased by Niagara Mohawk seeking recovery from the Security Fund. Thereafter, petitioner apprised the Superintendent of the settlement negotiations in that action and requested that he acknowledge coverage on behalf of the Security Fund under the relevant Integrity insurance policies. By letter dated March 20, 1990 the Superintendent advised petitioner that:
*512 "there exist two requirements for Security Fund coverage as applied to products liability insurance of the type here involved. These requirements are:
"1. That the products at issue left the possession and control of the insured in the State of New York.
"2. And, that at the time of the accident, the products were located in the State of New York.”
The Superintendent conceded facts supporting the second point but requested proof that "the products at issue left the possession and control of the insured in the State of New York.”
By letter dated May 4, 1990, petitioner replied that "the products were delivered in New York pursuant to a contract which required delivery FOB Niagara Mohawk’s New York plant.” Petitioner argued that under the Uniform Commercial Code, the products were transported to New York at petitioner’s risk and "title to the products did not pass until New York delivery was made.” According to petitioner, the FOB delivery alone satisfied the qualification requirement for the Security Fund.
Petitioner disagreed with the Superintendent’s view that petitioner could qualify for coverage only if it was shown that the valves "were delivered by [petitioner’s] company in its own trucks or were installed by [its] employees.” As petitioner explained, "the common carrier’s assumption of physical possession and control of the product outside of New York does not involve the creation of the risk with which the Fund is concerned.” Unmoved by petitioner’s argument, by letter dated May 11, 1990, the Superintendent denied Security Fund coverage due to the absence of proof that the products had left the possession and control of petitioner in New York.
Petitioner commenced the present proceeding pursuant to CPLR article 78 challenging the Superintendent’s determination that it had relinquished possession and control of the subject products outside of New York when it shipped the valves from Rhode Island to New York via common carrier.
Supreme Court identified the central question posed by Insurance Law § 7602 as whether the claim had a substantial connection to New York to qualify for Security Fund coverage. The court noted that under the New York Uniform Commercial Code, "a seller retains title and risk of loss of items shipped FOB place of destination, until they arrive at their
*513 specified destination.” Pursuant to such reasoning, the court held that "the valves having been shipped FOB Scriba, New York, they left Paramount’s possession and control when they reached their destination in New York.” In so holding, the court annulled the Superintendent’s denial of coverage as "unreasonable and arbitrary.”
The Appellate Division affirmed, stating:
"that since the insured product was shipped by common carrier FOB place of destination in New York, it should be deemed to have left the seller’s hand and entered the stream of commerce * ** only upon delivery to the purchaser within the State of New York. Absent any explicit statutory guidance, principles of commercial law (see, UCC 2-319 [1] [b]; 2-509 [1] [b]; 2-401 [2] [b]), tort law (see, Restatement [Second] of Torts § 402A [1] [B]), and products liability law (see, Voss v Black & Decker Mfg. Co., 59 NY2d 102, 107) support the conclusion that, shipment from out-of-State notwithstanding, the transfer of legal control to a party who will use the product for its intended use in-State, the purchaser in this case, should define when the insurable risk comes into being.” (199 AD2d 90, 90-91.)
The parties subsequently stipulated that the MSIV claim was indeed covered by the Integrity policy, and Supreme Court entered judgment for petitioner in the amount of $980,000 against the Security Fund. This Court granted the Superintendent’s motion for leave to appeal from the judgment to bring up for review the prior nonfinal Appellate Division order.
The Superintendent has broad authority and responsibility to interpret the Insurance Law (see, e.g., Blue Cross & Blue Shield v McCall, 89 NY2d 160, 163; Matter of New York Pub. Interest Research Group v New York State Dept. of Ins., 66 NY2d 444, 448; Matter of Consolidated Mut. Ins. Co., 60 NY2d 1, 8; Ostrer v Schenck, 41 NY2d 782, 785). Indeed, the Insurance Law specifically provides that the Superintendent "may adopt, amend and enforce all reasonable rules and regulations necessary for the proper administration” of the Security Fund (Insurance Law § 7613; see also, Insurance Law § 7601 [e]).
When applying its special expertise in a particular field to interpret statutory language, an agency’s rational construction is entitled to deference (see, Matter of Jennings v New York State Off. of Mental Health, 90 NY2d 227; Kurcsics v Merchants *514 Mut. Ins. Co., 49 NY2d 451, 459; Matter of Consolidated Mut. Ins. Co., 60 NY2d 1, 8, supra). Indeed, once it has been determined that an agency’s conclusion has a "sound basis in reason” (Matter of Pell v Board of Educ., 34 NY2d 222, 231), the judicial function is at an end and a reviewing court may not substitute its judgment for that of the agency. On the other hand, an irrational determination by the agency requires no deference and may properly be annulled (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459, supra ["if the regulation runs counter to the clear wording of a statutory provision, it should not be accorded any weight”]; Matter of Jennings v New York State Off. of Mental Health, 90 NY2d 227, supra).
The Security Fund was established "for use in paying property and liability claims remaining unpaid by reason of the insurer’s insolvency” (Matter of Consolidated Mut. Ins. Co., 60 NY2d 1, 6, supra). During the relevant period, Insurance Law § 7603 (a) (1) provided that only "allowed claims” qualified for Security Fund coverage.[1] Prior to its amendment in 1990, Insurance Law § 7602 (g) defined an "allowed claim” as "a claim based upon a policy insuring property or risks located or resident in this state.” Section 7603 (a) (1) (B) provided that the fund shall only pay certain specified insurance claims "with respect to coverage of property or risks located or resident in [New York].”
The Superintendent has defined the eligibility requirements under Insurance Law § 7602 (g) and § 7603 (a) (1) (B) as two separate types of risks, (1) the "insured risk” and (2) the "covered risk.” These terms do not appear anywhere in the statutes. With respect to product liability cases, the Superintendent has required that the insured risk be "located at the place where the insured relinquishes physical possession and control of the product” and that the covered risk be "located at the place of the occurrence, incident or accident giving rise to coverage.”
As the Superintendent recognizes, the Legislature hinged Security Fund eligibility based upon the location of the insured and covered property and/or risks. Under the plain language of the statute, the "property or risks” must be "located or resident in this state” to qualify as an allowed claim (Insurance *515 Law § 7602 [g]).[2] The record reflects that the locus requirement set forth in the statute has been satisfied.
It is conceded that the direct and consequential damages incurred by Niagara Mohawk stem from the physical presence of the valves in this State. As stated in Matter of Interstate Ins. Co. (47 NY2d 909), "the fund covers only 'risks’ located in New York” (id., at 911). That same reasoning should also apply to the other term in the statute, property. Clearly, at the time the claim arose for purposes of the Security Fund, the property was "located” in this State as that term is commonly understood (see, Black’s Law Dictionary 940 [6th ed 1990] ["(h)aving a physical presence or existence in a place”]).[3]
When it is manifest that the property at issue is actually "located * * * in this state” — the determinative factor under the plain language of the statute — eligibility for Security Fund coverage should not depend upon the manner of its delivery to New York. Indeed, assuming the valves had been installed and an inherent defect remained undetected until after several years of operation and use here in New York, the Superintendent presumably would still contend that the valves were not "located” in New York merely because a common carrier had delivered them from Rhode Island. The Legislature has set forth a test based upon the location of the property, not the location of the insured and not the location where the insured relinquishes possession and control of the property.
The Superintendent contends that petitioner’s "shipping the MSIVs by common carrier rather than [using] its own trucks” is dispositive. However, using that fact to determine whether the property was "located” in New York is arbitrary when applied to facts that plainly fulfill the requirements contained in *516 the statutory language. As such, the Superintendent’s determination requires no deference and must be annulled.[4]
Accordingly,, the judgment appealed from and the order of the Appellate Division brought up for review should be affirmed, with costs.
Chief Judge Kaye and Judges Titone, Bellacosa, Ciparick and Wesley concur; Judge Levine taking no part.
Judgment appealed from and order of the Appellate Division brought up for review affirmed, with costs.

. The relevant provisions of the Insurance Law were amended in 1990 for prospective enforcement. Because the events at issue occurred prior to these enactments, we have no reason to address the amended provisions.

. Of course, an allowed claim must also be "based upon a policy insuring” such property (Insurance Law § 7602 [g]). However, since the parties have stipulated that the Integrity policies insure the MSIVs manufactured by petitioner, the sole question presented is whether the valves were "located or resident” in this State for Security Fund purposes.

. Arguably, the valves were also "resident” in this State during the time the claim arose. The final destination of the MSIVs was, and always intended to be, New York. Indeed, it is undisputed that the subject property was to be an integral and permanent part of a nuclear power plant here in New York. However, because the valves were "located” here, we see no reason to pass upon the meaning of the statutory term "resident” (cf., Antone v General Motors Corp., 64 NY2d 20, 28 ["(t)he term residence * * * has been employed by Legislatures for a variety of purposes”]).

. Both lower courts concluded that since the valves were shipped by common carrier FOB with a New York destination, the property left the seller’s hands upon delivery in New York. In view of our holding regarding the insured property’s "location” for Security Fund purposes, we have no need to resolve this issue under the facts presented.