■ In the Matter of NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., Respondents-Appellants, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION, Appellant-Respondent. (Appeal No. 1.) In the Matter of NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., Appellants, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION, Respondent. (Appeal No. 2.) [994 NYS2d 125]—

Motion by the petitioners/plaintiffs for leave to reargue (1) appeals from an order and judgment (one paper) of the Supreme Court, Westchester County, entered January 10, 2012, as amended by an order of the same court entered, upon the parties' consent, on April 18, 2012, and (2) a separate appeal from the order of the same court entered upon the parties' consent on April 18, 2012, which were determined by a decision and order of this Court dated November 13, 2013.

Upon the papers filed in support of the motion and the papers filed in relation thereto, it is,

Ordered that the motion for leave to reargue is granted and, upon reargument, the decision and order of this Court dated November 13, 2013 (*Matter of Natural Resources Defense Council, Inc. v New York State Dept. of Envtl. Conservation*, 111 AD3d 737 [2013], *lv granted* 23 NY3d 901 [2014]) is recalled and vacated, and the following decision and order is substituted therefor:

In a hybrid proceeding pursuant to CPLR article 78 to review a determination of the New York State Department of Environmental Conservation approving the issuance of state pollutant discharge elimination system general permit GP-0-10-002 for stormwater discharges from municipal separate storm sewer systems, and action for a judgment declaring that state pollutant discharge elimination system general permit GP-0-10-002 for stormwater discharges from municipal separate storm sewer systems is contrary to certain state and federal laws, (1) the respondent/defendant New York State Department of Environmental Conservation appeals, as limited by its brief, from so much of an order and judgment (one paper) of the Supreme Court, Westchester County (Lefkowitz, J.), entered January 10, 2012, as amended by an order of the same court entered, upon the parties' consent, on April 18, 2012, as was in favor of the

petitioners/plaintiffs and against it declaring that the general permit created an impermissible self-regulatory system that failed to ensure that small municipalities reduced their pollutant discharges to the "maximum extent practicable," as required by section 402 of title IV of the Federal Clean Water Act of 1972, as amended by Pub L 100-4, § 405, 101 US Stat 7 (Water Quality Act of 1987) (33 USC § 1342 [p] [3] [B] [iii]) and ECL 17-0808 (3) (c), and unlawfully failed to provide an opportunity for public hearings on proposed notices of intent before they were submitted to it, in violation of 33 USC § 1342 (a) (1) and ECL 17-0805 (1) (a) (ix), granted those branches of the petition which were to annul its determination approving the issuance of the general permit on the grounds that it was affected by error of law and was arbitrary and capricious to the extent that the general permit created an impermissible self-regulatory system that failed to ensure that small municipalities reduced their pollutant discharges to the "maximum extent practicable," as required by 33 USC § 1342 (p) (3) (B) (iii) and ECL 17-0808 (3) (c), and unlawfully failed to provide an opportunity for public hearings on proposed notices of intent before they were submitted to it, in violation of 33 USC § 1342 (a) (1) and ECL 17-0805 (1) (a) (ix), and, inter alia, in effect, directed it to issue revisions to the general permit consistent with the disposition of the causes of action which were for a declaration that the general permit created an impermissible self-regulatory system that failed to ensure that small municipalities reduced their pollutant discharges to the "maximum extent practicable," as required by 33 USC § 1342 (p) (3) (B) (iii) and ECL 17-0808 (3) (c), and unlawfully failed to provide an opportunity for public hearings on proposed notices of intent before they were submitted to it, in violation of 33 USC § 1342 (a) (1) and ECL 17-0805 (1) (a) (ix), and the petitioners/plaintiffs cross-appeal, as limited by their notices of appeal and brief, from so much of the order and judgment entered January 10, 2012, as amended by the order entered, upon the parties' consent, on April 18, 2012, as was in favor of the respondent/defendant New York State Department of Environmental Conservation and against them, in effect, declaring that the general permit did not fail to ensure that small municipalities complied with state water quality standards and, thus, was not in violation of ECL 17-0811 (5), did not unlawfully fail to ensure that small municipalities monitored their storm water discharges and, thus, was not in violation of 33 USC § 1318 (a), and did not fail to provide for public hearings on proposed stormwater management plans and proposed watershed improvement strategies and, thus, was not in violation of 33 USC § 1251 (e),

and (2) the petitioners/plaintiffs separately appeal from the order of the same court entered upon the parties' consent on April 18, 2012.

Ordered that the appeal from the order entered April 18, 2012 is dismissed, without costs or disbursements, as that order was entered upon the parties' consent, and no appeal lies from an order entered on consent (*see* CPLR 5511; *Barry v Barry*, 60 AD3d 882 [2009]); and it is further,

Ordered that the order and judgment entered January 10, 2012, as amended April 18, 2012, is affirmed insofar as cross-appealed from; and it is further,

Ordered that the order and judgment entered January 10, 2012 is reversed insofar as appealed from, on the law, those branches of the petition which were to annul the determination of the respondent/defendant New York State Department of Environmental Conservation approving the issuance of the general permit on the grounds that it was affected by error of law and was arbitrary and capricious to the extent that the general permit created an impermissible self-regulatory system that failed to ensure that small municipalities reduced their pollutant discharges to the "maximum extent practicable," as required by 33 USC § 1342 (p) (3) (B) (iii) and ECL 17-0808 (3) (c), and unlawfully failed to provide an opportunity for public hearings on proposed notices of intent before they were submitted to it, in violation of 33 USC § 1342 (a) (1) and ECL 17-0805 (1) (a) (ix), are denied, and the matter is remitted to the Supreme Court, Westchester County, for the entry of an appropriate amended judgment dismissing those portions of the proceeding and declaring, inter alia, that the general permit did not create an impermissible self-regulatory system that failed to ensure that small municipalities reduced their pollutant discharges to the "maximum extent practicable," as required by 33 USC § 1342 (p) (3) (B) (iii) and ECL 17-0808 (3) (c), and did not unlawfully fail to provide an opportunity for public hearings on proposed notices of intent before they were submitted to it, as required by 33 USC § 1342 (a) (1) and ECL 17-0805 (1) (a) (ix); and it is further,

Ordered that one bill of costs is awarded to the New York State Department of Environmental Conservation.

The Federal Water Pollution Control Act, 33 USC §§ 1251 *et seq.* (hereinafter the Clean Water Act), was enacted to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters" (33 USC § 1251 [a]). To effectuate this purpose, the Clean Water Act established the national pollutant discharge elimination system (hereinafter NPDES), which gen-

erally prohibits the discharge of water pollution from point sources into surface waters, except in compliance with a NPDES permit issued by the Administrator of the United States Environmental Protection Agency (hereinafter the EPA) or a state pollutant discharge elimination system (hereinafter SPDES) permit issued by an EPA-authorized state agency (*see* 33 USC § 1342). The Clean Water Act, as implemented by the EPA, authorizes the issuance of individual NPDES and SPDES permits to specific industrial pollutant dischargers or general NPDES and SPDES permits that cover multiple dischargers within a geographical area (*see* 40 CFR 122.2, 122.26 [c]; 122.28, 123.25 [a] [11]).

The Environmental Conservation Law established a SPDES permit program to ensure that New York had "adequate authority to issue permits regulating the discharge of pollutants from new or existing outlets or point sources into the waters of the state," in conformance with the Clean Water Act's rules and regulations and to participate in the NPDES created by the Clean Water Act (ECL 17-0801). On October 28, 1975, the EPA authorized New York to issue NPDES permits through the state's SPDES program, and the New York State Department of Environmental Conservation (hereinafter the DEC) was empowered to administer the SPDES permit program pursuant to article 17, title 8, of the ECL (*see* Memorandum of Agreement between the State of New York Department of Environmental Conservation and the United States Environmental Protection Agency, dated October 28, 1975, as renewed and amended).

In 1987, the Clean Water Act was amended to establish a framework for regulating municipal and industrial storm water pollutant discharges through the NPDES and SPDES permit system (*see* Water Quality Act of 1987, Pub L 100-4, § 405, 101 Stat 7 [1987] [codified at 33 USC § 1342 (p)]). A municipality's discharge of storm water from a "municipal separate storm sewer system" (hereinafter an MS4) was prohibited unless the municipality obtained an individual NPDES or SPDES permit or obtained coverage under a NPDES or SPDES general permit (*see* 33 USC 1342 [p] [3] [B]; 40 CFR 122.26 [a] [5]; 123.25 [a] [9], [11]; 122.28 [a] [2] [i]; ECL 17-0808, 70-0117 [6] [b] [i]; 6 NYCRR 750-1.21 [b] [5]; 750-1.4 [b]).

On April 29, 2010, the DEC issued state pollutant discharge elimination system general permit GP-0-10-002, effective May 1, 2010, for stormwater discharges from MS4s (hereinafter the General Permit). By its own terms, the General Permit is set to expire on April 30, 2015.

The petitioners/plaintiffs (hereinafter the petitioners) commenced this hybrid proceeding pursuant to CPLR article 78 to review the determination of the DEC approving the issuance of the General Permit, and action for a judgment declaring that the General Permit was contrary to certain enumerated state and federal laws.

To the extent that the petitioners sought relief pursuant to CPLR article 78, the petition/complaint (hereinafter the petition), in effect, alleged that the determination approving the issuance of the General Permit "was affected by an error of law" (CPLR 7803 [3]) since it violated the enumerated state and federal laws, and was arbitrary and capricious since the public hearing protocol adopted by the DEC was based, in part, on a misinterpretation of what constitutes a "permit application" within the meaning of the Clean Water Act and the ECL that would trigger the need for a public hearing. To the extent that the petitioners sought declaratory relief, the petition, in effect, sought a judgment declaring that the General Permit was contrary to each of the enumerated state and federal laws.

The petition organized the alleged violations of state and federal law into four general groups, asserting that:

(1) the General Permit failed to ensure that small municipalities reduced their pollutant discharges to the maximum extent practicable, in violation of 33 USC § 1342 (p) (3) (B) (iii) and ECL 17-0808 (3) (c);

(2) the General Permit failed to ensure that small municipalities complied with state water quality standards, in violation of ECL 17-0811 (5) and ECL 17-0813;

(3) the General Permit failed to ensure that small municipalities monitored their storm water discharges, in violation of 33 USC § 1318 (a) and ECL 17-0815 (8); and

(4) the General Permit did not provide for public participation in the permit process, in violation of 33 USC §§ 1251 (e); 1342 (a) (1) and (j) and ECL 17-0805 (1) (a) (ix).

An order and judgment (one paper) was entered by the Supreme Court on January 10, 2012, in favor of the petitioners and against the DEC declaring, inter alia, that the General Permit created an impermissible self-regulatory system that failed to ensure that small municipalities reduced their pollutant discharges to the "maximum extent practicable," as required by 33 USC § 1342 (p) (3) (B) (iii) and ECL 17-0808 (3) (c), and that the General Permit unlawfully failed to provide an opportunity for a public hearing on proposed notices of intent before they were submitted to the DEC, in violation of 33 USC § 1342 (a) (1) and ECL 17-0805 (1) (a) (ix).

However, the order and judgment was in favor of the DEC and against the petitioners declaring that the General Permit did not fail to ensure that small municipalities complied with state water quality standards and, thus, was not in violation of ECL 17-0811 (5), did not fail to ensure that small municipalities monitored their storm water discharges and, thus, was not in violation of 33 USC § 1318 (a), and did not fail to provide for public hearings on proposed stormwater management plans and proposed watershed improvement strategies and, thus, was not in violation of 33 USC § 1251 (e).

In light of its determination that the general permit violated, among other things, 33 USC §§ 1342 (a) (1) and (p) (3) (B) (iii); ECL 17-0805 (1) (a) (ix) and 17-0808 (3) (c), the Supreme Court also granted that branch of petition which was, in effect, pursuant to CPLR 7803 (3) to annul the DEC's determination to approve the issuance of the General Permit on the ground that the determination was affected by error of law. Accordingly, the court, in effect, directed the DEC to issue revisions to the General Permit consistent with its determination of the causes of action for a declaratory judgment.

The order and judgment was subsequently amended by an order entered April 18, 2012, upon the parties' consent. The substance of the amendment is not relevant to this appeal.

The DEC appeals from so much of the order and judgment, as amended by the order made upon the parties' consent, as was adverse to it. The petitioners cross-appeal from, inter alia, the portions of the order and judgment, which were adverse to them.

Initially, since the parties charted a summary judgment course in addressing the several declaratory judgment causes of action, which present no factual disputes and involve only the legal interpretation of various statutes and regulations, it was not inappropriate for the Supreme Court, under the unique circumstances presented here, to reach the merits of those causes of action (see O'Hara v Del Bello, 47 NY2d 363, 367-368 [1979]; Hendrickson v Philbor Motors, Inc., 102 AD3d 251, 258-259 [2012]).

Contrary to the Supreme Court's conclusion, the General Permit did not violate 33 USC § 1342 (p) (3) (B) (iii) or ECL 17-0808 (3) (c). Under state and federal law, "[p]ermits for discharges from municipal storm sewers . . . shall require controls to reduce the discharge of pollutants to the maximum extent practicable, including management practices, control techniques and system, design and engineering methods, and such other provisions as the Administrator or the State determines appropriate for the control of such pollutants" (33 USC § 1342 [p] [3] [B] [iii]; compare ECL 17-0808 [3] [c]).

Accordingly, the "[m]aximum extent practicable . . . is the statutory standard that establishes the level of pollutant reductions that operators of regulated MS4s must achieve" (64 Fed Reg 68722, 68754 [1999]; *see* 40 CFR 122.34 [a]). The "EPA has intentionally not provided a precise definition of [maximum extent practicable] to allow maximum flexibility in MS4 permitting" (64 Fed Reg 68722, 68754 [1999]). It has determined that "MS4s need the flexibility to optimize reductions in storm water pollutants on a location-by-location basis" (*id.*). The "EPA envisions that this evaluative process will consider such factors as conditions of receiving waters, specific local concerns, . . . MS4 size, climate, implementation schedules, current ability to finance the program, beneficial uses of receiving water, hydrology, geology, and capacity to perform operation and maintenance" (*id.*).

To assist in this process, the EPA has "outline[d] six minimum control measures that constitute the framework for a storm water discharge control program for regulated small MS4s that, when properly implemented, will reduce pollutants to the maximum extent practicable" (64 Fed Reg 68722, 68752 [1999]; *see* 40 CFR 122.34 [a]). The EPA has determined that, in most cases, the "[p]roper implementation of the measures will significantly improve water quality" (64 Fed Reg 68722, 68753 [1999]). "[H]owever, small MS4 permittees should modify their programs if and when available information indicates that water quality considerations warrant greater attention or prescriptiveness in specific components of the municipal program" (*id.*).

"In issuing the general permit, the NPDES permitting authority" is to "establish requirements for each of the minimum control measures" (64 Fed Reg 68722, 68754 [1999]). The minimum control measures are to be addressed by a municipality through the identification of "best management practices," which are to be utilized to address each of the minimum control measures (*see* 40 CFR 122.34 [a]). "Permits typically will require small MS4 permittees to identify in their [notices of intent] the [best management practices] to be performed and to develop the measurable goals by which implementation of the [best management practices] can be assessed" (64 Fed Reg 68722, 68754 [1999]).

"Upon receipt of the [notice of intent] from a small MS4 operator, the NPDES permitting authority will have the opportunity to review the [notice of intent] to verify that the identified [best management practices] and measurable goals are consistent with the requirement to reduce pollutants under the [maximum extent practicable] standard, to protect water

quality, and to satisfy the appropriate water quality require-ments of the Clean Water Act" (64 Fed Reg 68722, 68754 [1999]). "If necessary, the NPDES permitting authority may ask the permittee to revise their [sic] mix of [best management practices], for example, to better reflect the [maximum extent practicable] pollution reduction requirement" (*id.*). "If, after implementing the six minimum control measures there is still water quality impairment associated with discharges from the MS4, after successive permit terms the permittee will need to expand or better tailor its [best management practices] within the scope of the six minimum control measures for each subsequent permit" (*id.*).

The General Permit at issue on this appeal is consistent with the scheme for general permits envisioned by the EPA, and is designed to meet the maximum extent practicable standard prescribed by 33 USC § 1342 (p) (3) (B) (iii) and ECL 17-0808 (3) (c). The General Permit requires entities seeking coverage to "develop, implement and enforce" a stormwater management plan designed to address pollutants of concern and "reduce the discharge of pollutants from the small MS4" to the maximum extent practicable, so as "to protect water quality, and to satisfy the appropriate water quality requirements of the ECL and the Clean Water Act" (*see* General Permit at 14, 95). A stormwater management plan must, inter alia, identify and describe the chosen best management practices and include measurable goals for each such practice (*see* General Permit at 95). The General Permit provides applicants with resources, including examples of successful stormwater management plans, a "menu" of best management practices, and suggested measurable goals (*see* General Permit at 95).

It is noted in the General Permit that "[i]f a covered entity chooses only a few of the least expensive methods, it is likely that [the maximum extent practicable standard] has not been met" (General Permit at 91). "On the other hand, if a covered entity employs all applicable [best management practices] except those where it can be shown that they are not technically feasible in the locality, or whose cost would exceed any benefit to be derived, it would have met the standard" (General Permit at 91). The maximum extent practicable standard requires covered entities to choose effective best management practices, and to reject applicable best management practices only where other effective best management practices that could be used to eliminate or control the discharge of pollutants will serve the same purpose, the best management practices would not be technically feasible, or the cost would be prohibitive (*see* General Permit at 91).

The petitioners nevertheless argued, and the Supreme Court concluded, that the General Permit creates a self-regulatory system that does not ensure that entities operating under the General Permit have satisfied the maximum extent practicable standard articulated in 33 USC § 1342 (p) (3) (B) (iii) and ECL 17-0808 (3) (c). Specifically, the petitioners contended that the General Permit does not require any review of the notices of intent submitted by municipalities seeking coverage so as to ensure that the selected best management practices do, in fact, represent measures that will reduce the discharge of pollutants to the maximum extent practicable (*see Environmental Defense Ctr., Inc. v United States Envtl. Protection Agency*, 344 F3d 832 [9th Cir 2003]; *see also Waterkeeper Alliance, Inc. v United States Envtl. Protection Agency*, 399 F3d 486 [2d Cir 2005]).

Contrary to the petitioners' contention, the General Permit does include a variety of enforcement measures that are sufficient to comply with the maximum extent practicable standard, as described in state and federal statutes (*see* 33 USC § 1342 [p] [3] [B] [iii]; ECL 17-0808 [3] [c]).

In order to come within the ambit of the General Permit, a municipality must submit a "complete and accurate" notice of intent (General Permit at 8). The public must be given notice of each notice of intent that is submitted to the DEC, and public comments are received for a minimum of 28 days thereafter (*see* General Permit at 8). "After the public comment period has expired, the [DEC] may extend the public comment period, require submission of an application for an individual SPDES permit or alternative SPDES general permit, or accept the [notice of intent] or [stormwater management program] as complete" (General Permit at 8). Operators who submit a complete notice of intent in accordance with the requirements of the General Permit are authorized to discharge stormwater from small MS4s, under the terms and conditions of the General Permit, "upon written notification from the [DEC] that a complete [notice of intent] has been received" (General Permit at 9).

DEC regulations further provide that "[p]ermits may include and the permittee shall comply with such other terms, provisions, requirements or conditions as may be necessary to meet the requirements of ECL Article 17 and 40 CFR 122 . . . including but not limited to requirements to implement best management practices plans" (6 NYCRR 750-1.14 [f]). Morover "[g]eneral permits may be issued, modified, and reissued, or terminated" by the DEC (6 NYCRR 750-1.21 [d]). In addition, the DEC "may require any discharger authorized to discharge

in accordance with a general permit to apply for and obtain an individual SPDES permit or apply for authorization to discharge in accordance with another general permit" where, inter alia, "[t]he discharger is not in compliance with the conditions of the general permit" (6 NYCRR 750-1.21 [e] [1] [i]).

Under the General Permit itself and state implementing regulations in general, the DEC is vested with sufficient authority to enforce the statutory mandates of 33 USC § 1342 (p) (3) (B) (iii) and ECL 17-0808 (3) (c) to reduce pollution discharge to the maximum extent practicable. Although the General Permit allows a municipality to identify and develop the best management practices it will utilize in light of the particular circumstances facing it, the ultimate determination of whether that municipality's discharges are covered by the General Permit lies with the DEC, since coverage is not afforded until the DEC accepts the notice of intent or stormwater management plan as complete, and issues written notification (*see* General Permit at 8-9). The DEC may refuse to accept a notice of intent that fails to set forth best management practices adequately addressing the six required minimum control measures or otherwise failing to comply with the maximum extent practicable standard (*see* General Permit at 14, 95). Even after a notice of intent has been accepted as complete, the DEC may modify the General Permit or require an entity covered under the General Permit to apply for a special individual permit on the ground that the entity has failed to reduce the discharge of pollutants to the maximum extent practicable (6 NYCRR 750-1.21 [e] [1] [i]).

The petitioners have not demonstrated, nor have they even asserted, that the permitting scheme implemented through the General Permit necessarily results in coverage of municipalities whose stormwater management plans do not meet the maximum extent practicable standard. Indeed, the petitioners have not demonstrated a single instance where the General Permit has authorized discharges of pollutants in contravention of the maximum extent practicable standard.

The petitioners' argument that the entire permitting scheme is flawed constitutes a systemic challenge to the General Permit. The DEC adequately rebutted this allegation by establishing that it had the power to review the best management practices enumerated in a municipality's notice of intent and to reject a municipality's stormwater management plan by exercising its power to reject a notice of intent as incomplete. The determination of the DEC to exercise its authority to require compliance with the maximum extent practicable standard in any particular case must necessarily be evaluated with reference to the par-

ticular circumstances of that case, since a determination of what constitutes the maximum extent practicable will vary depending on the circumstances facing each municipality. Since the petitioners have not challenged the DEC's assessment of any particular stormwater management plan on the ground that it does not comply with the maximum extent practicable standard, such issues are not before this Court.

Since the petitioners failed to demonstrate that the General Permit violated 33 USC § 1342 (p) (3) (B) (iii) or ECL 17-0808 (3) (c), the Supreme Court should have awarded judgment in favor of the DEC declaring that the general permit did not create an impermissible self-regulatory system that failed to ensure that small municipalities reduced their pollutant discharges to the "maximum extent practicable," as required by 33 USC § 1342 (p) (3) (B) (iii) and ECL 17-0808 (3) (c). Furthermore, the court erred to the extent that it relied on alleged violations of 33 USC § 1342 (p) (3) (B) (iii) or ECL 17-0808 (3) (c) in annulling the DEC's determination approving the issuance of the General Permit on the ground that it was affected by error of law.

We disagree with the Supreme Court's determination that the General Permit was issued in violation of 33 USC § 1342 (a) (1) and ECL 17-0805 (1) (a) (ix). Congress did not explicitly define "permit application" to refer only to applications submitted for an individual permit or to notices of intent submitted to obtain coverage under an existing general permit (*see Texas Ind. Producers & Royalty Owners Assn. v Environmental Protection Agency*, 410 F3d 964, 978 [2005]). Accordingly, unless the DEC's interpretation of "permit application" is arbitrary and capricious, it is entitled to deference in this regard (*see Chevron U.S.A. Inc. v Natural Resources Defense Council, Inc.*, 467 US 837, 843 [1984]; *Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast*, 9 NY3d 219, 232 [2007]; *Matter of 427 W. 51st St. Owners Corp. v Division of Hous. & Community Renewal*, 3 NY3d 337, 342 [2004]). It was not arbitrary and capricious for the DEC to limit the opportunity for public hearings to those situations in which a new general permit is proposed or an existing general permit is renewed, since any modifications to a draft general permit resulting from public comment and hearings will extend to all covered entities (*see Texas Ind. Producers & Royalty Owners Assn. v Environmental Protection Agency*, 410 F3d at 978). Accordingly, the Supreme Court should have awarded judgment in favor of the DEC declaring that the General Permit did not unlawfully fail to provide an opportunity for a public hearing on proposed notices of intent before they

were submitted to the DEC and, thus, was not in violation of 33 USC § 1342 (a) (1) and ECL 17-0805 (1) (a) (ix). Furthermore, the court erred to the extent that it relied on alleged violations of 33 USC § 1342 (a) (1) or ECL 17-0805 (1) (a) (ix) in annulling the DEC's determination to approve the issuance of the General Permit on the grounds that it was affected by error of law or was arbitrary and capricious.

We agree with the Supreme Court that the General Permit does not fail to ensure compliance with State water quality standards (see ECL 17-0811 [5]; 17-0813). Federal law requires the EPA and the States to develop water quality standards for interstate and intrastate waters, respectively (see 33 USC § 1313 [a]; *Natural Resources Defense Council, Inc. v Fox*, 909 F Supp 153, 156 [1995]), and allows the EPA and States discretion in the development of a program to meet those standards (see 33 USC § 1313 [e]). Moreover, although Congress specifically provided that permits issued to industrial dischargers must be conditioned on compliance with effluent limitations set forth in 33 USC § 1311 (see 33 USC § 1342 [p] [3] [A]; *Defenders of Wildlife v Browner*, 191 F3d 1159, 1164-1165, *amended on other grounds* 197 F3d 1035 [1999]), it specifically provided that permits for *municipal dischargers* with respect to municipal storm sewers "shall require controls to reduce the discharge of pollutants to the maximum extent practicable" (33 USC § 1342 [p] [3] [B] [iii]), without reference to any numerical limitation established under the Clean Water Act in connection with any particular effluent. Accordingly, with respect to the municipal dischargers covered under the General Permit, Congress, rather than imposing specific effluent limitations, vested the EPA and the States with discretion in imposing pollution controls sufficient to meet water quality standards which could, but are not required to, incorporate effluent limitations. Thus, the provisions of the General Permit challenged by the petitioners in their cross appeal with respect to effluent limitations and water quality standards are not contrary to law (see *Chevron U.S.A. Inc. v Natural Resources Defense Council, Inc.*, 467 US at 843; *Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast*, 9 NY3d at 232; *Matter of 427 W. 51st St. Owners Corp. v Division of Hous. & Community Renewal*, 3 NY3d at 342; *Paramount Communications v Gibraltar Cas. Co.*, 90 NY2d 507, 513-514 [1997]).

Furthermore, Congress did not specifically address the nature or extent of the public participation that is required for the establishment of any effluent limitations that the EPA or the States, in the exercise of their discretion, seek to promulgate

(*see* 33 USC § 1251 [e]). The DEC's determination to provide for public participation in the establishment of effluent limitations at the general permit issuance and renewal stages, but not after the issuance of the general permit, is not contrary to 33 USC § 1251 (e) (*see Chevron U.S.A., Inc. v Natural Resources Defense Council, Inc.*, 467 US at 843; *Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast*, 9 NY3d at 232; *Matter of 427 W. 51st St. Owners Corp. v Division of Hous. & Community Renewal*, 3 NY3d at 342; *Paramount Communications v Gibraltar Cas. Co.*, 90 NY2d at 513-514).

The parties' remaining contentions are without merit.

Accordingly, those branches of the petition which were to annul the determination of the respondent/defendant New York State Department of Environmental Conservation approving the issuance of the General Permit on the grounds that it was affected by error of law and was arbitrary and capricious to the extent that the General Permit created an impermissible self-regulatory system that failed to ensure that small municipalities reduced their pollutant discharges to the "maximum extent practicable," as required by 33 USC § 1342 (p) (3) (B) (iii) and ECL 17-0808 (3) (c), and unlawfully failed to provide an opportunity for public hearings on proposed notices of intent before they were submitted to it, in violation of 33 USC § 1342 (a) (1) and ECL 17-0805 (1) (a) (ix), should have been denied, and judgment should have been awarded to the DEC declaring that the General Permit did not create an impermissible self-regulatory system that failed to ensure that small municipalities reduced their pollutant discharges to the "maximum extent practicable," as required by 33 USC § 1342 (p) (3) (B) (iii) and ECL 17-0808 (3) (c), and did not unlawfully fail to provide an opportunity for public hearings on proposed notices of intent before they were submitted to it, as required by 33 USC § 1342 (a) (1) and ECL 17-0805 (1) (a) (ix). Rivera, J.P., Leventhal, Austin and Miller, JJ., concur.